WILGUS, APPELLEE, v. ARTHUR, APPELLANT.

(No. 888—Decided September 8, 1943.)

*Mr. Howard A. Traul* and *Mr. Roy Warren Roof,* for appellee.

*Messrs. Long, Long & Abel* and *Mr. George S. Middleton,* for appellant.

GUERNSEY, P. J. This is an appeal upon questions of law from an order of the Common Pleas Court of Logan county, made on motion of the plaintiff and heard before any answer was filed by defendant. Such order appointed a receiver of all the property, real and personal, equitable interests and things in action belonging to the partnership of French L. Wilgus and L. D. Arthur doing business as "Danceland."

The order was made in an action in the Common Pleas Court, wherein the appellee, French L. Wilgus, was plaintiff and the appellant, L. D. Arthur, was defendant.

In his petition, the plaintiff alleged the execution of a lease of certain premises known as the "Marathon Building" at the village of Russells Point, Logan county, Ohio, by The Russells Point Resort Company, French L. Wilgus and Ruth Wilgus to the plaintiff and defendant as joint lessees, for the period of ten years beginning June 25, 1940, for the purpose of conducting jointly, the business known as Danceland. Plaintiff further alleged the formation of a partnership between the plaintiff and the defendant for the purpose of conducting such business; the carrying on of the partnership business during the resort seasons of the years 1940, 1941 and 1942; and certain acts and omissions on the part of the defendant in derogation of his duties as a partner under such agreement.

The prayer of the petition is that the partnership may be adjudged dissolved; that an account be taken of all partnership dealings and transactions; that the debts and liabilities of the partnership be paid off; that the surplus, if any, of the property be distributed; that a receiver be appointed to take charge of the partnership property in order to operate the same under the order of the court; that the defendant be enjoined from bothering, interfering with or molesting in any manner the conduct of the business known as Danceland; that the lease be terminated and forfeited; and that such other and further relief be granted as may be just and proper in the premises.

The motion of the plaintiff, upon which the order appointing the receiver was made, omitting the caption and signatures, is in the words and figures following, to wit:

"Now comes French L. Wilgus, the plaintiff in this cause and moves the court for the appointment of a receiver in this action for the following reasons, set forth in the petition:

"1. Plaintiff has an interest in the funds derived from the operation of the business which is the subject of litigation and is in danger of being lost.

"2. That the defendant is suffering the property and assets and good will of the business to irreparable loss and damage.

"3. That the defendant is fraudulently converting funds derived from the business to his own use and has failed, refused and neglected to account for the funds derived in the operation of the business.

"4. That defendant herein is excluding plaintiff from his proper share in the management of the partnership assets and business.

"5. That the hostility and loss of confidence existing between the partners is so great that it is injurious to the business and said business is suffering great and irreparable loss thereby."

From the bill of exceptions of the hearing on such motion, the following facts appear:

Under date of October 31, 1939, The Russells Point Resort Company, French L. Wilgus and Ruth Wilgus, as lessors, entered into a written agreement of lease with L. D. Arthur and French L. Wilgus as lessees, whereby the lessors leased to the lessees, for a period of ten years beginning on the 25th day of June, 1940, a certain building known as the "Marathon Building" and the ground adjacent thereto, as approved by the state of Ohio, Department of Conservation, now located north and west of the building known as the "Old Vienna Gardens," such "Marathon Building" being situated on certain real estate, specifically de-

scribed in the lease, located at Russells Point, Indian lake, Ohio.

In October 1939, the plaintiff and defendant entered into an agreement of partnership for the purpose of operating a dance-hall business in the leased premises for a period of ten years commencing the 25th day of June, 1940, such agreement being in the words and figures following, to wit:

"This agreement made and entered into by and between F. L. Wilgus and L. D. Arthur, this....day of October, 1939.

"Whereas, the parties hereto have agreed to improve and enlarge the building now known as the 'Marathon Building' at Russells Point, Ohio, as described in a certain lease now held by the parties hereto from the Russells Point Resort Company and French L. Wilgus and Ruth Wilgus, said building, when remodeled and enlarged, to be known as 'Danceland,' for the purpose of operating a dance hall therein for the period of ten (10) years from the 25th day of June, 1940, in consideration of the premises and for the purpose of defining the rights and duties of the partners hereto, it is hereby mutually agreed by and between the parties hereto, as follows, to wit:

"L. D. Arthur hereby agrees that he will, at his own expense, remodel, improve and enlarge the building now known as the 'Marathon Building,' in accordance with the plans and specifications already approved by the Department of Conservation of the state of Ohio, expending therefor whatever sum of money that may be necessary to make said improvements, in accordance with said plans and specifications.

"It is hereby agreed that L. D. Arthur is to operate and manage said dance hall for this partnership, and is to receive as compensation therefor the sum of fifty dollars ($50) per week during the season which is to

open on Decoration Day of each year and close on Labor Day of each year. Should the parties hereto decide to remain open longer than the season provided for herein, it is hereby agreed that L. D. Arthur is to receive compensation as and for his services as manager, on the basis of a salary of fifty dollars ($50). per week, prorated according to the actual number of days in excess of the season, during which said dance hall is operated.

"It is hereby agreed by the parties hereto that F. L. Wilgus is to receive no salary.

"It is hereby mutually agreed that the expense for electrical current used in the operation of said building as a dance hall, is to be paid in equal shares by the parties hereto, and to be determined by the number of kilowatt hours consumed in the operation of said dance hall at the average cost per kilowatt hour on the master meter.

"It is further mutually agreed by the parties hereto that from the profits of said enterprise L. D. Arthur is to be first repaid in full for all expenses which he may incur in the improvement, enlargement and remodeling of the building now known as the 'Marathon Building,' in accordance with the terms of this agreement.

"After L. D. Arthur has been paid in full, it is mutually agreed that F. L. Wilgus, from the profits of the enterprise, is then to receive an amount equal to one half (½) of the cost of improvement, before L. D. Arthur is to participate in any of the profits of said enterprise.

"After the sums provided for in the above next preceding paragraph have been paid, it is hereby agreed that the parties hereto are to divide the net profits from said enterprise equally, all expenses incurred in the operation of said dance hall to be borne equally by the

partners and paid before any determination of the net profit is made.

"F. L. Wilgus hereby agrees that he will bear all expense of any litigation that may be brought by any persons under any prior lease, on the premises referred to in this agreement, and that he will protect the said L. D. Arthur in said possession, against any causes of action for possession, accounting of profits or otherwise, that may arise prior to the 25th day of June, 1940, the date this agreement is to take effect.

"In witness whereof, the parties have hereunto set their hands to duplicate copies hereof, this....day of October, 1939."

Pursuant to such agreement the defendant at an expense to him of approximately $16,000, remodeled, improved and enlarged the building on the leased premises known as the "Marathon Building" which was thereafter designated and known as "Danceland," and on behalf of the partnership operated and managed the dance hall business therein daily during the resort seasons of the years 1940, 1941 and 1942, commencing on Decoration Day and closing on Labor Day of each year.

During this period of time a sufficient profit was realized from the conduct of the dance-hall business to reimburse the defendant to the extent of approximately $4,000 of the $16,000 expended by him in remodeling, improving and enlarging the building pursuant to the terms of the partnership agreement.

From the terms of the agreement fixing the defendant's compensation for operating and managing the dance hall for the partnership at the sum of $50 per week during the season opening upon Decoration Day and closing on Labor Day of each year without prescribing any specific days of the week in which the dance hall should be operated, and providing that if

the parties to the agreement should decide to remain open longer than the season prescribed, the defendant, Arthur, should receive compensation for his services as manager, on the basis of a salary of $50 per week, prorated according to the actual number of days in excess of the season during which the dance hall is operated, it is apparent that the parties thereto contemplated and based the salary of the defendant, Arthur, upon the daily operation of the dance hall during the specified season.

At the commencement of the 1943 resort season the defendant, Arthur, being of the opinion, as testified by him, that the operation of the dance hall daily during the resort season of 1943 would result in a loss to the partnership of a considerable sum of money, although the dance hall business had, during the previous three resort seasons, been operated daily at a considerable profit, over the objections of the plaintiff, decided to and did operate the dance hall from the commencement of the resort season of 1943, only upon Saturday and Sunday nights of each week.

The evidence introduced by the plaintiff tended to prove that the operation of the dance hall for two nights a week during the resort season of 1943 would cause a loss to the partnership business and that such operation was occasioned by the defendant having engaged in other business to which he desired to devote his attention during the other days of the week rather than by any anticipated loss to the partnership in the event such business was operated daily during the resort season.

On the other hand, the evidence introduced by the defendant tended to prove that, on account of existing war conditions, the dance-hall business could be operated at a profit only by confining its operation to Saturday and Sunday of each week; that a substantial

loss. would result if the dance hall was operated daily each week; and that the. other business in which the defendant was engaged was of such character that it did not in any way interfere with defendant's operation and management of the dance-hall business, whether the dance hall was operated only two days a week or daily each week.

The defendant's sole assignment of error is that the court abused the discretion conferred on it by Section 11894, General Code, in making the order from which this appeal is taken.

Abuse of discretion is a discretion exercised to an end or purpose not justified by and clearly against reason and evidence. 1 Bouvier's Law Dictionary (Rawle's 3d Rev.), 94.

There is no evidence that the defendant is fraudulently converting funds derived from the business to his own use or has failed, refused or neglected to account for the funds derived from such business, as charged in specification 3 of the motion, so this ground of the motion is without merit.

Under the written agreement of partnership it is stipulated that the defendant, L. D. Arthur, is to operate and manage the dance hall for the partnership, so the plaintiff, by the agreement, excluded himself from participation in the operation and management of the partnership assets and business. Therefore, under the evidence, there is no basis for the fourth specification of plaintiff's motion, that the defendant excluded him from his proper share in the management of the partnership assets and business. However, the defendant, under the agreement, owed the plaintiff the duty to operate and manage the partnership business in the interests of the partnership, and, unless loss to the partnership could be reasonably anticipated, to

operate the dance hall daily during the resort season as contemplated by the agreement.

In view of the fact that, under the provisions of the partnership agreement, the defendant, Arthur, is to operate and manage the dance hall for the partnership, the fifth specification of the motion that the hostility and loss of confidence existing between the partners is so great that they are injurious to the business and that such business is suffering great and irreparable loss thereby, is without merit.

Furthermore, the partnership agreement comprehends terms designated and effective to secure to the defendant reimbursement for advancements made by him in the aggregate of approximately $16,000, for which he has received reimbursement only to the extent of approximately $4,000, for the remodeling and enlarging of the building, now known as Danceland, leased by the partnership. Thus it would be inequitable to order a dissolution of the partnership, and the termination or cancellation of the lease until such time as the defendant has been fully reimbursed, as provided by the agreement, for advancements made by him pursuant to the terms of the agreement.

The action being one between partners jointly interested in property, and there being no facts in evidence which would otherwise warrant the appointment of a receiver by the usages of equity, the only ground upon which a receiver could be appointed pursuant to the provisions of Section 11894, General Code, is that such property is in danger of being lost or materially injured, upon which ground specifications one and two of the motion are predicated.

The evidence introduced by the plaintiff, tending to prove that the business operated by the partnership had been operated at a considerable profit for a period of three resort seasons preceding the present sea-

son; that it is a valuable business; and that the operation thereof during the 1943 resort season, on Saturday and Sunday of each week instead of daily each week during the season would result in a loss to the partnership, tends to sustain this ground.

The question then arises as to whether the evidence tending to sustain this ground for the appointment of a receiver, is sufficient to sustain the order of the court appointing a receiver herein.

The right to a review of findings and decisions on the weight of the evidence, by error, did not exist at common law, and, in this state, is solely the subject of statutory enactment. *Ide* v. *Churchill,* 14 Ohio St., 372.

Under the provisions of Sections 11376, 11377, 11378 and 11575, General Code, the right to a review of findings and decisions on the weight of the evidence, by error, is limited to the review of issues of fact made by pleadings, as defined in Sections 11377 and 11378, General Code.

Orders made on the hearing of motions as for the appointment of receivers in which no issues of fact are made up by pleadings are not subject to review on the weight of the evidence. *Minnear* v. *Holloway,* 56 Ohio St., 148, at page 154, 46 N. E., 636.

A judgment made in a proceeding such as this, not involving an issue of fact as defined by Section 11377, General Code, may be reviewed for the purpose and only for the purpose of determining whether there is evidence tending to prove the facts essential to sustain the judgment, but a reviewing court may not in any event review the weight of the evidence upon such order. Such order may be reversed only when there is failure of proof essential to sustain a judgment, and may not in any event be reversed on the weight of the evidence.

Otherwise expressed, the court's determination of

fact questions, in the course of a cause, of motions or of other special proceedings will not be disturbed on appeal if the evidence is conflicting or there is evidence to sustain the finding. 5 Corpus Juris Secundum, 562, Section 1643.

As there is evidence in this cause tending to sustain the presumed finding of the Common Pleas Court that the property which is the subject of litigation between the partners is in danger of being lost or materially injured, the Common Pleas Court did not abuse its discretion in making the order from which this appeal is taken, and the order must be and is affirmed regardless of the weight of the evidence and regardless of the fact that the evidence tending to sustain such presumed finding is in direct conflict with other evidence in the cause.

*Order affirmed.*

JACKSON and CARPENTER, JJ., concur.

CARPENTER, J., of the Sixth Appellate District, sitting by designation in the Third Appellate District.