EQUITY CENTERS DEVELOPMENT COMPANY et al., Appellants,

v.

SOUTH COAST CENTERS, INC. et al., Appellees; Campbell, Appellee.

[Cite as *Equity Centers Dev. Co. v. S. Coast Centers, Inc.* (1992), 83 Ohio App.3d 643.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 62768, 62769.

Decided Nov. 16, 1992.

*Terence J. Clark* and *Luke L. Dauchot,* for appellants.

*Gregory M. Lichko,* for appellees.

*Moses Krislov,* for appellee Campbell.

---

FRANCIS E. SWEENEY, Judge.

Plaintiffs-appellants, Equity Centers Development Co. and Interstate Centers Company (hereinafter referred to as "appellants" or "Equity"), appeal from the judgment of the common pleas court which granted the verified motion for an appointment of a receiver filed by defendants-appellees, South Coast Centers, Inc. and Canterbury Trust (hereinafter referred to as "appellees" or "South Coast") and Richard L. Bowen (hereinafter referred to as "Bowen"), and joined in by third-party defendant-appellee, David Campbell (hereinafter referred to as "Campbell"). For the reasons set forth below, we reverse the decision of the common pleas court.

This appeal involves two consolidated actions filed in the common pleas court brought by appellants against appellees based on three partnership agreements in which the parties are equal partners. Each partnership was entered into at various times pursuant to a joint venture agreement between the parties. In general, appellants sought implementation of a contractually agreed formula to dilute South Coast's interests and rights in the partnerships based on South Coast's alleged breach of fiduciary duties and failure to meet various capital calls required to meet necessary partnership expenses and obligations. Appellees duly answered and filed a counterclaim seeking an accounting from appellants concerning the three partnerships. Appellees then filed a third-party complaint against David Campbell and later filed a verified motion for appointment of a receiver for all three partnerships. Campbell joined in said motion. After the filing of an opposition brief by appellants, response brief by appellees, and affidavits and depositions by all parties, the trial court granted appellees' motion. Appellants timely appeal.[1]

The facts giving rise to this appeal are as follows:

On September 1, 1986, a joint venture agreement was entered into between Equity Centers Development Co., South Coast Centers, Inc., and the Burrow family trust to acquire, develop and operate shopping center properties.

Equity Centers Development Co. is a partnership between Equity Investment Center II Co. and Christopher J. Rodeno. Rodeno is also a shareholder of Interstate Centers Co. Both Equity Investment Center II Co. and Interstate Centers Co. are owned by various partners of the Kahn, Kleinman, Yanowitz and Arnson law firm. South Coast Centers, Inc. is a corporation, with Canterbury Trust as its sole shareholder and Donald M. Robiner as president and sole trustee of the trust. Richard Bowen is an architect who owns the architectural firm of Richard L. Bowen & Associates, Inc. Richard Bowen and David Campbell are equal beneficiaries of the Canterbury Trust.

The parties to the joint venture agreement operate shopping centers in Virginia and Florida through three limited partnerships: (1) RAC–Harrisonburg, L.P. ("Harrisonburg"); (2) First Interstate Charlottesville Limited Partnership ("Charlottesville"); and (3) First Interstate Neptune Limited Partnership ("Neptune"). In each of the three partnerships, Bowen and his associates, directly or indirectly, own fifty percent of the general partners' interests and fifty percent of the limited partners' interests, while the Kahn, Kleinman group likewise, directly or indirectly, owns fifty percent of the general partners' interest and fifty percent of the limited partners' interest.

---

1. The appointment of a receiver is a final order from which an appeal may be prosecuted. *Metro. Life Ins. Co. v. Begin* (1938), 59 Ohio App. 5, 6–7, 12 O.O. 337, 16 N.E.2d 1015–1016.

Initially, a division of labor was agreed upon and existed among the partners with respect to the three shopping center projects. Architectural services for the shopping center projects were provided by Richard L. Bowen & Associates, Inc. Legal services were provided by Kahn, Kleinman. Finally, Burrow was charged with the day-to-day management of the partnerships. In February 1988, Equity purchased Burrow's interests in all three partnerships and assumed Burrow's duties with respect to the day-to-day management of the partnerships. Thus, according to Lawrence Sherman and Christopher Rodeno, Equity became responsible to provide or supervise such services as maintaining the shopping center properties, making and overseeing leasing arrangements with tenants, collecting operating income, and ensuring payment of operating expenses.[2] The joint venture agreement also provides that Equity is responsible for arranging and closing partnership financing, while execution of such borrowing and lease documents requires approval from all partners. Apparently, Christopher Rodeno supervised such day-to-day management functions for the partnerships.

On the other hand, appellees point out that all management decisions are to be made by unanimous consent of the two general partners. Appellees note that the three partnership agreements incorporated by reference the joint venture agreement. Further, the joint venture agreement, at Section 19, provides:

"The overall management and control of the business and affairs of the Joint Venture *and the Development Partnerships* shall be conducted by the Venturers collectively through a committee of three (3) members, as hereinafter provided (the 'Committee'). *Except where herein expressly provided to the contrary, all decisions with respect to the management and control of the Joint Venture and the Development Partnerships approved unanimously by the Committee* shall be binding upon the Joint Venture and each Venturer." (Emphasis added.)

Further, the Charlottesville and Neptune partnership agreements state, "the General Partners by unanimous consent, shall manage, control, and make all decisions affecting the business and assets of the partnership. *Implementation* of the Committee's decisions on a daily basis will be the responsibility of Burrow, which is hereby granted the authority, on behalf of the Partnership, to implement such decisions." (Emphasis added.) The Harrisonburg agreement reads differently, but results in no practical difference.

Equity further asserts, by way of Christopher Rodeno's affidavit, that operational and financial data are available to all partners, while partnership matters are discussed at partnership meetings scheduled with reasonable and timely notice. However, Richard Bowen's affidavit avers that Equity has failed and refused to provide full and complete financial information. Instead, Bowen

---

2. The deposition testimony of Richard Bowen does not dispute these assertions.

asserts he has only been provided an unaudited financial compilation which states it is "limited to presenting in the form of a financial statement information that is the representation of management." Bowen also asserts Equity has taken control of the finances of the partnerships through control of the checking accounts of each partnership. Finally, Bowen claims he is only consulted when his signature is needed for a transaction, and then only at the eleventh hour.

It appears undisputed that development and construction of all three shopping centers were primarily financed through debt. Partnership loans totalled over $35 million, with approximately $34 million in principal and interest remaining. Partnership expenses, including construction, architectural, engineering and legal fees, were initially funded from construction loans. Equity further asserts that at the close of the construction loans, the Charlottesville and Neptune properties have been generating sufficient rental income to meet operating expenses, with the exception of legal fees and tax payments. In fact, South Coast has refused to meet capital calls necessary in order to pay Florida real estate taxes which, if not paid, would have placed the Neptune partnership in default. The trial court granted injunctive relief so the taxes could be paid. However, the Harrisonburg property continues to operate at a relative shortfall. Appellees point out that attorney fees owed to Kahn, Kleinman are over $200,000, which, Bowen asserts by way of affidavit, are unreasonable given that Kahn, Kleinman had already paid itself over $800,000 in fees. However, Bowen's deposition testimony reveals that neither he nor Campbell has ever reviewed such bills.

Equity also points out, and it is undisputed, that all the $34 million in outstanding loans to the partnerships is subject to automatic default provisions under the terms of the loan agreements upon imposition of the partnerships to receivers. Such default allows the lending institutions to automatically call in all loans, which would likely render the partnerships insolvent. Notwithstanding the above, Equity cites to the affidavit of James R. Wilson, a National City Bank officer who supervises over $10 million of loans extended to the Harrisonburg partnership, who attested to NCB's confidence in the management of such property by Equity. Wilson avers that the partnership's financial situation was caused by an extremely soft real estate market and, further, Wilson opposes receivership over the partnership. However, during Wilson's deposition, he stated that as long as the partnership was meeting its obligations to the bank to make payments on the loan, he would not call in the loan despite appointment of a receiver.

In any event, Equity has made several capital calls on South Coast which have not been met. Equity has, therefore, paid South Coast's purported share to meet the partnerships' obligations. Equity has made over $2.5 million in capital contributions, while South Coast has contributed approximately $1 million. Ro-

biner, president of South Coast and trustee of Canterbury Trust, has admitted that in some instances, South Coast has not met all the cash calls because South Coast had insufficient funds to do so. However, South Coast cites the alleged overbilling in legal fees as a major reason why the partnerships have failed to meet current obligations. South Coast also cites Equity's purported seizure of control of the partnerships' decisions which, it is claimed, are to be made by unanimous consent. South Coast also argues, by way of Bowen's affidavit, that the partnership properties are being mismanaged by Equity. Bowen averred that Equity's mismanagement includes: not hiring an on-site property manager; hiring an inexperienced leasing agent; not obtaining competitive bidding for insurance needs of the partnerships and, instead, giving all of the insurance business to a friend of Larry Sherman; not preparing or implementing any kind of written management plan or leasing plan to set forth a favorable leasing mix; not developing any kind of operations manual outlining maintenance programs on a current and preventative basis; and billing as legal fees work which should be done by a professional property manager. However, Bowen's deposition testimony reveals that he does not know who or what the qualifications of the leasing agents hired by Rodeno are, and he does not know anything about present management's leasing efforts. To the contrary, Robiner, who admits being the party responsible for signing and approving all documents, testified he does not take issue with the leasing arrangements and indicated he has no opinion on the issue.

Based on the above evidence, the trial court, in an eight-page judgment entry appointing a receiver, granted appellees' verified motion. Appellants timely appeal, raising three assignments of error for our review.

Appellants' first and second assignments of error are as follows:

"I. The trial court erred in appointing a receiver over three non-party partnerships without an evidentiary hearing and without making essential evidentiary determinations, on the basis of an erroneous standard of proof, and with a record devoid of evidence required by law for the appointment of a receiver.

"II. The trial court erred in directing the extraordinary remedy of a receiver over three non-party partnerships where other adequate remedies exist to address appellees' claims, where receivership will not protect or preserve partnership assets but will automatically place the partnerships in default of approximately $34 million in loans, and where a receiver would have to assume the supervisory role of property manager over three on-going and viable business entities which are meeting expenses and liabilities."

In appellants' first and second assignments of error, they argue the trial court abused its discretion in appointing a receiver without first conducting an evidentiary hearing. They contend the evidence fails to establish that the partnerships

would suffer irreparable harm absent the appointment of a receiver and that no evidence exists to support the contention that the appointment of a receiver will make a material difference toward the preservation of the partnership assets. Moreover, appellants argue the appointment of a receiver will likely destroy, rather than protect, the ongoing, viable partnerships and that, in any event, there are other legal and/or equitable remedies available to appellees. Appellants' arguments have merit.

R.C. 2735.01 governs the appointment of receivers. It states, in relevant part:

"A receiver may be appointed by * * * the court of common pleas or a judge thereof in his county, * * * in the following cases:

"(A) In an action * * * between partners or others jointly owning an interest in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;

" * * *

"(F) In all other cases in which receivers have been appointed by the usages of equity."

The appointment of a receiver is the exercise of an extraordinary, drastic and sometimes harsh power which equity possesses and is only to be exercised where the failure to do so would place the petitioning party in danger of suffering an irreparable loss or injury. *Hoiles v. Watkins* (1927), 117 Ohio St. 165, 174, 157 N.E. 557, 559. Because the appointment of a receiver is such an extraordinary remedy, the party requesting the receivership must show by clear and convincing evidence that the appointment is necessary for the preservation of the complainant's rights. *Malloy v. Malloy Color Lab, Inc.* (1989), 63 Ohio App.3d 434, 437, 579 N.E.2d 248, 250.

It has long been recognized that the trial court is vested with sound discretion to appoint a receiver. *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 73, 573 N.E.2d 62, 66. The Ohio Supreme Court has recently stated:

"A court in exercising its discretion to appoint or refuse to appoint a receiver must take into account all the circumstances and facts of the case, the presence of conditions and grounds justifying the relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies." *Id.* at 73, 573 N.E.2d at 67, fn. 3.

The order for an interim receiver may be reviewed only for the purpose of determining whether there is evidence tending to prove the facts essential to sustain the order, and a reviewing court may not consider the weight of the

evidence. *Malloy v. Malloy Color Lab., Inc.* (1989), 63 Ohio App.3d 434, 436, 579 N.E.2d 248, 249. Such order may be reversed only when there is failure of proof which would be essential to support the order, and the order may not, in any event, be reversed upon the weight of the evidence. *Id.,* citing *Wilgus v. Arthur* (1943), 72 Ohio App. 511, 53 N.E.2d 197.

Appellants first contend the trial court failed to make any evidentiary findings necessary for the appointment of a receiver, including a finding that, absent the appointment of a receiver, the assets of the three partnerships are in danger of irreparable harm. Appellants further argue the trial court adopted the wrong evidentiary standard by relying on "probable cause" rather than "clear and convincing" proof. In fact, the trial court expressly noted it was not making any "determination" with respect to the rights, claims and charges made by and between the parties, stating it was leaving that determination for final hearing on the merits of this case. Nonetheless, the trial court stated that "the necessity for the appointment. of a Receiver has been shown and have shown [*sic*] probable cause that absent such appointment, applicants' rights and interests *could likely* be adversely affected." (Emphasis added.)

It is undisputed that the person requesting a receivership must show by clear and convincing evidence that the appointment of a receiver is necessary for the preservation of the complainant's rights. *Malloy, supra,* 63 Ohio App.3d at 437, 579 N.E.2d at 250. However, the trial court, after summarizing the "evidence"[3] presented, notes that it was not making any determination with respect to the rights, claims and charges made by and between the parties. Despite leaving this determination for a final hearing, the trial court concludes that the necessity for the appointment of a receiver has been shown and that the applicants' rights and interests could be adversely affected absent such appointment.

We, therefore, conclude the trial court abused its discretion in appointing a receiver over the partnerships in question. The record before us does not, and indeed cannot, support the trial court's decision which expressly notes it was not making any determination with respect to the rights, claims and charges made by and between the parties while, at the same time, concluding that the "applicants' rights and interests could likely be adversely affected." Without making a determination of the applicants' rights, we cannot see how the trial court can conclude that the appointment of a receiver is necessary for the preservation of those rights. In reaching this decision, we are also mindful that the party requesting such receivership must show by clear and convincing

---

**3.** Much of the evidence presented to support the appointment consists of verified motions and self-serving, conclusory affidavits, the effect of which can hardly be said to amount to clear and convincing evidence.

evidence that the appointment is necessary for the preservation of the complaints' rights. *Malloy, supra,* at 437, 579 N.E.2d at 250. Similarly, the trial court abused its discretion in appointing the receiver where the applicants' rights and interests, which have yet to be determined, could likely be adversely affected, absent appointment of a receiver. The trial court's determination that the applicants' rights could likely be affected simply does not meet the standard that the appointment of the receiver is necessary for the preservation of the applicants' rights.

Appellate courts have not hesitated to reverse a lower court's decision to appoint a receiver where there exists a complete lack of evidence supporting such decision. See *Bank One, Columbus, N.A. v. O'Brien* (Dec. 31, 1991), Franklin App. Nos. 91AP–166 and 91AP–441, unreported, 1991 WL 281429. In the present case, the trial court's own journal entry demonstrates a complete lack of evidence supporting such decision, since the court expressly noted it was not making any determinations with respect to the rights, claims and charges made by and between the parties.

■  Appellants next argue that the trial court abused its discretion in appointing a receiver, since there is no showing that a receiver will make a material difference toward preservation of the partnership assets. In fact, appellants contend the appointment of a receiver will likely destroy the partnerships and not preserve them. In support of this argument, appellants presented testimony from James R. Wilson, a loan officer from National City Bank in charge of $10 million of loans to the Harrisonburg partnership, indicating his opposition to receivership and his confidence in the present management. Furthermore, all of the $34 million in outstanding loans is subject to default upon imposition of receivership, which could render the partnerships insolvent. However, while the deposition testimony of Wilson indicates that he would not call in the loans if the Harrisonburg partnership were able to meet its obligations to NCB, there is nothing else in the record which would indicate that other financial institutions would be so lenient with respect to their legal rights and financial concerns. In support of the appointment of a receiver, the thrust of appellees' argument posits that the appointment was made to protect their rights and interests with respect to the three partnerships. Again, however, this argument lacks merit, since the trial court expressly noted that it was not making any determinations with respect to the rights, claims and charges made by and between the parties. Moreover, assuming that such determination was made and it was concluded that appointment of a receiver was necessary to protect appellees' rights and interests *vis-a-vis* the partnerships, such appointment would still be an abuse of discretion since it would subject all three partnerships to immediate default of $34 million in outstanding debt, which would likely render the partnerships insolvent. It could

hardly be said that this would be in any party's interest. See *Gibbs, supra,* 60 Ohio St.3d at 73, 573 N.E.2d at 67, fn. 3.

Finally, appellants argue that the appointment of a receiver for a going, solvent concern is a last-resort remedy and should not be employed where other adequate remedies are available. *Hoiles, supra,* 117 Ohio St. at 183, 157 N.E. at 562; *George v. Yorkshire Tel. Co.* (1931), 11 Ohio Law Abs. 54, 56 (" 'Where the corporation is a going concern a receiver should not be appointed at the instance of minority stockholders or bondholders, unless the rights of all the parties will be best served by such an appointment.' "). In the present case, the risks inherent in the appointment of a receiver due to the default provisions contained in the $34 million in outstanding loans to the partnerships are unnecessary and unwarranted because appellees have other legal and equitable remedies available to address their complaints. Excessive legal fees can be remedied with damages. Allegations of usurpation of management responsibilities and withholding of financial data can be addressed via injunctive relief and/or an accounting.

Therefore, based on the specious state of the record supporting appointment of a receiver, which mainly consists of unsupported, conclusory affidavits and contradictory deposition testimony, the lack of any determination regarding the rights, claims and charges made by and between the parties which would support a determination that appointment of a receiver is necessary to protect those rights, the lack of any evidence which would show that the appointment of a receiver would make a material difference toward preservation of the partnership assets and the great likelihood that the appointment will likely destroy the partnerships, and due to the availability of other legal and equitable remedies, we hold the trial court abused its discretion in appointing a receiver over the partnerships in question.

Accordingly, appellants'. first and second assignments of error are well taken.

Appellants' third assignment of error follows:

"III. The trial court erred in purporting to exercise jurisdiction to appoint a receiver over three partnerships not parties to the litigation, as well as over the shopping center properties of those non-party partnerships which are located outside the jurisdiction of the trial court, in the states of Virginia and Florida."

Because this court finds appellants' first and second assignments of error well taken, we do not feel compelled to address appellants' third assignment of error. App.R. 12(A)(1)(c). Accordingly, appellants' third assignment of error is moot.

*Judgment reversed*
*and cause remanded.*

MATIA, C.J., and BLACKMON, J., concur.