OPINION
In February of 1998, appellee Carl L. Stover acquired appellant Campus Commodities, Inc., a custom clothing manufacturing and sales business. The business consisted of a cut-and-sew assembly facility in Fremont, Ohio; a warehouse, screening, embroidery, shipping, and general office facility in Delaware; and an outlet store in Delaware. In early 1999, appellee decided to hire a manager for Campus. Appellant David Heutel approached Stover respecting investment opportunities. While negotiating for an agreement for Heutel to invest in Campus, appellee permitted Heutel to take over operational management and control of Campus in March of 1999. Appellee and Heutel failed to come to an agreement on the terms of a stock purchase agreement for Campus. While acting as President and Manager of Campus, Heutel learned of the availability of the assets of Famous Fraternity Sportswear, a defunct business which had been in essentially the same business as Campus. Heutel formed DH Sportswear, LLC,(DHS), and through that company acquired the assets of Famous. Appellee became concerned that Heutel was essentially operating Campus as a subsidiary of DHS. On March 8, 2000, appellee filed the instant action, alleging that after Heutel formed DHS, Heutel fraudulently used Campus' goodwill, business reputation, clients, equipment, employees, licenses, and inventory, for his own purposes to detriment of Campus and appellee. Appellant Heutel filed a counterclaim against appellee. In the counterclaim, Heutel requested that he be appointed Receiver of Campus. Appellee filed a motion for appointment of a receiver, premised upon Heutel's operation of Campus and his business as one enterprise, commingling assets, and diverting the property, customers, and suppliers of Campus to his own benefit. The court granted the motion ex parte on May 30, 2000. The court later stayed appointment of the receiver, and set appellant's motion to set aside the receivership for a hearing on June 5, 2000. The court converted the receivership to a special examiner by order of June 14, 2000. The special examiner was instructed to account for the books and records of the companies, and the status of the businesses. Over appellant's objections, the court approved the report of the special examiner. In light of the special examiner's report, appellee sought an expedited re-appointment of the receiver. The court received evidence from appellants and appellee, and conducted an oral hearing on the motion. The court then re-appointed Reg Martin as Receiver on September 5, 2000. Appellants assign a single error on appeal:
 THE COURT OF COMMON PLEAS ABUSED ITS DISCRETION IN ISSUING ITS ORDER RE-APPOINTING A RECEIVER, BY FAILING TO COMPLY WITH THE CONSTRAINTS OF OHIO REVISED CODE 2735.01 GOVERNING THE APPOINTMENT OF A RECEIVER OF CORPORATE AFFAIRS.
R.C. 2735.01 governs the appointment of Receivers: A receiver may be appointed by the supreme court or a judge thereof, the court of appeals or a judge thereof in his district, the court of common pleas, or a judge thereof in his county, or the probate court, in causes pending in such courts respectively, in the following cases;
 (A) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured.
 (E) When a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;
 (F) In all other cases in which receivers have been appointed by the uses of equity.
Appellant concedes that appointment of a receiver for Campus may fall within any of the above quoted sections. The appointment of a receiver is the exercise of an extraordinary, drastic, and sometimes harsh power which equity possesses, and is only to be exercised when the failure to do so would place the petitioning party in danger of suffering an irreparable loss or injury. Equity Centers Development Company v. Southcoast Centers, Inc.(1992), 83 Ohio App.3d 643, 649. The party requesting a receivership must show by clear and convincing evidence that the appointment is necessary for the preservation of the complainant's rights. Id. The trial court is vested with sound discretion to appoint a receiver. Id., citing State ex rel. Celebrezze v. Gibbs (1991),60 Ohio St.3d 69, 73. In exercising its discretion, the court must take into account all the circumstances and facts of the case, the presence and conditions of grounds justifying relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies. Id., An order appointing a receiver may reversed by a reviewing court only where there is failure of proof which would be essential to support the order, and the order may not be reversed upon the weight of the evidence. Id. at 650. Appellants first argue that appointment of a receiver is unnecessary, as Campus is unable to afford the cost of a receiver, and Heutel has offered to return total control of Campus to appellee, thereby obviating the need for a receiver. This claim is without merit. While appellant Heutel states in an affidavit that he has offered to return control of Campus to appellee, the question of intermingling of corporate funds with DHS would not be resolved by such action, and the record does not reflect the parties had reached an actual agreement regarding return of control. Further, as to ability to pay, R.C. 2735.01 recognizes the appointment of a receivership for a company in insolvency, where the company clearly would be unable to pay. In addition, at least initially, the court has ordered that appellee pay the receiver and special examiner's fees. Appellants next argue that appellee lacks standing to seek a receivership over DHS, as appellee has no financial interest in the company. The report of the special examiner demonstrates that Heutel had been and continues to run Campus, DHS, and Famous as essentially one enterprise from one facility. A deadlock in management existed. Id. at 3. Heutel continued to send DHS catalogues and correspondence to customers, but has not sent Campus catalogues and correspondence to customers. Id. at 8. While sales for DHS dramatically increased from 1999 to 2000, Campus' sales substantially decreased; however, Campus' expenses correspondingly increased over the same time period. Id. at 9-10. Heutel did not complete or file a tax return for Campus in 1999, and failed to complete an inventory for Campus since 1998. Id. at 9. DHS had infiltrated and usurped Campus' customer base. Id. at 7-8. Campus' sales force had been substantially diminished, while DHS's sales force expanded, in some cases to include former Campus sales representatives. Id. DHS's merchandise orders have been filled from Campus' inventory, and Campus products when sold, were now sold through DHS rather than to end users directly, resulting in lower profit. Id. at 11. DHS had not been adequately compensated for use of its assets. Id. The report of the special examiner, appointed and approved by the court, clearly provided the court with sufficient evidence to conclude that appellee had standing to seek a receiver over DHS, as DHS was effectively taking over Campus through the operation of Heutel. The court did not err in concluding that the receiver was necessary to unwind the two companies, as the insolvency of the companies appeared imminent. Appellants next argue that appellee had adequate remedies at law, and therefore a receivership was not appropriate. As discussed earlier, appellee presented evidence to the court to demonstrate that a receivership was necessary in order to immediately preserve the status quo, and protect appellees' property interest in Campus. Further, in its counterclaim, appellant had requested a receivership over Campus, with a request that appellant Heutel be appointed the receiver. Adequacy and effectiveness of other remedies is merely one factor to be considered by the court. Celebrezze, supra, at 73. Appellants next argue that the receivership will cause irreparable harm to DHS. Appellants argue that Heutel made a huge investment in DHS in order to set up a sales line for the fall 2000 football season, and if the receiver blocks or adversely impacts these plans, DHS would likely fail. Further, appellants argue that appointment of the receiver will cause National City Bank to call a demand note in the amount of $250,000 and declare a default on other notes, totaling $182,000. The weighing of the equities between the parties lies within the sound discretion of the trial court. The court did not abuse its discretion, as appellants' arguments of financial disaster are based upon speculation concerning the acts of the receiver. Finally, appellants contend that the receivership order is overbroad and contrary to law. Appellants argue that the court exceeded its discretion by granting the receiver power to collect market rent for the properties which Campus and DHS occupy, and in authorizing the receiver to liquidate corporate assets. R.C. 2735.04 provides that under the control of the court which appointed him, a receiver may take and keep possession of property, receive rent, and generally do such acts respecting the property as the court authorizes. Clearly, the statute confers general authority to take possession of property and receive rent, and the court was therefore in its discretion in empowering the receiver to collect such rents from DHS, if the receiver determined that DHS was using Campus assets in the daily operation of its business. Further, the order only allows the receiver to liquidate the companies upon court order. May 24, 2000, Judgment Appointing Receiver, page 4. The only discretion entrusted to the receiver concerning liquidation is to determine the manner in which to liquidate following the order from the court. Any claim concerning liquidation is therefore premature. The assignment of error is overruled.
The judgment of the Delaware County Common Pleas Court is affirmed.
Gwin, P.J., Wise, J., and Edwards, J., concur