OHIO BUREAU OF WORKERS' COMPENSATION, Appellee,

v.

AMERICAN PROFESSIONAL EMPLOYER, INC., Appellant; American
Professional Employer II, Inc. et al., Appellees.

[Cite as *Ohio Bur. of Workers' Comp. v. Am. Professional
Emp., Inc.*, 184 Ohio App.3d 156, 2009-Ohio-2991.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–1044.

Decided June 23, 2009.

Richard Cordray, Attorney General, by Special Counsel Andrew Cooke & Assoc., L.L.C., Andrew P. Cooke, and Adam J. Bennett, for appellee Ohio Bureau of Employment Services.

Roetzel & Andress, L.P.A., Robert B. Graziano, and Michael R. Traven, for appellant.

FRENCH, Presiding Judge.

{¶ 1} Defendant-appellant, American Professional Employer, Inc., appeals the Franklin County Court of Common Pleas' October 29, 2008 order appointing a receiver. Because we conclude that the trial court abused its discretion by appointing a receiver, we reverse.

{¶ 2} On June 22, 2007, plaintiff-appellee, Ohio Bureau of Workers' Compensation ("BWC"), filed a complaint in the Franklin County Court of Common Pleas against appellant and the following additional defendants: American Professional Employer II, Inc.; American Professional Employer III, Inc.; American Professional Employer IV, Inc.; and Louis R. Bologna. BWC alleged that appellant, an Ohio corporation, was an employer subject to Ohio's workers' compensation laws and that appellant had defaulted on its workers' compensation premiums and permitted its workers' compensation coverage to lapse. BWC had made assessments against appellant to recover unpaid workers' compensation premiums and amounts that BWC had paid to appellant's employees who had been injured during periods of appellant's lapsed coverage. BWC had certified to the Ohio attorney general for collection assessments against appellant totaling $820,428.75, including interest through June 18, 2007, and collection costs. BWC alleged that appellant had no assets and had ceased operations, and appellant admitted that it had been dissolved on or about July 5, 2006. BWC further alleged that Bologna, the sole shareholder and an officer of all the corporate defendants, had transferred appellant's assets to the other defendants for the purpose of defrauding BWC and avoiding payment to BWC.

{¶ 3} BWC's complaint sets forth the following claims: (1) noncompliance with R.C. 4123.75 against appellant, (2) fraudulent transfer, (3) statutory successor liability, (4) common-law successor liability, (5) breach of fiduciary duty against Bologna, and (6) piercing the corporate veil. Ultimately, BWC maintains that defendants are jointly and severally liable to BWC in the amount of $820,428.75, plus interest from June 18, 2007, and that all of defendants' assets must be made available to satisfy appellant's debt to BWC.

{¶ 4} On October 24, 2008, 16 months after filing the complaint, BWC filed a motion to appoint a receiver over appellant pursuant to R.C. 2735.01 and 1313.56. In its motion, BWC stated that it held judgments against appellant totaling $334,640.87, including interest and penalties, that remain unpaid and owing. BWC stated that appellant had been dissolved and was insolvent and reiterated its allegation that appellant's assets had been conveyed with the intent to hinder, delay, or defraud creditors. BWC made no further argument or assertion in support of its request for appointment of a receiver. With its motion, BWC submitted the affidavit of its counsel, Andrew P. Cooke, who stated that appellant

owed $334,640.87 on three judgments identified in BWC's motion and that attempts to execute upon the judgments had been unsuccessful.

{¶ 5} The trial court ordered an expedited response to BWC's motion, and appellant filed a memorandum in opposition on October 29, 2008. That same day, the trial court met with the parties' attorneys in chambers, heard brief oral arguments regarding BWC's motion, and filed its order appointing a receiver. The trial court's order states:

> [T]he Court finds that [appellant] is unable to meet its obligations as they become due and that it cannot offer reasonable security for its creditors. The Court further finds that as a result of the facts set forth in this matter that the requirements of R.C. 2735.01(C), R.C. 2735.01(E), and R.C. 1313.56 have been met and complied with and that the immediate appointment of a receiver is an appropriate and legally correct remedy.

Appellant subsequently filed a motion to reconsider or terminate the order appointing a receiver, but the trial court denied its motion.

{¶ 6} Appellant filed a timely notice of appeal, and it asserts a single assignment of error, as follows:

> The trial court erred in ordering the appointment of a receiver for [appellant].

{¶ 7} It is well settled that a trial court is vested with the sound discretion to appoint a receiver. *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 73, 573 N.E.2d 62. In determining whether to appoint a receiver, the court " 'must take into account all the circumstances and facts of the case, the presence of conditions and grounds justifying the relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies.' " Id. at 73, 573 N.E.2d 62, fn. 3, quoting 65 American Jurisprudence 2d (1972) 873–874, Receivers, Sections 19–20. The appointment of a receiver will not be disturbed on appeal absent a clear abuse of discretion. *Gibbs* at 73, 573 N.E.2d 62, citing *Consol. Rail Corp. v. Fore River Ry. Co.* (C.A.1, 1988), 861 F.2d 322, 326. An abuse of discretion is more than an error of law; it implies an unreasonable, arbitrary, or unconscionable attitude by the trial court. *Gibbs* at 74, 573 N.E.2d 62.

{¶ 8} BWC cited both R.C. 2735.01 and 1313.56 in support of its motion for appointment of a receiver. R.C. 2735.01 provides as follows:

> A receiver may be appointed by the supreme court or a judge thereof, the court of appeals or a judge thereof in his district, the court of common pleas or a judge thereof in his county, or the probate court, in causes pending in such courts respectively, in the following cases:

(A) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;

(B) In an action by a mortgagee, for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and the property is probably insufficient to discharge the mortgage debt;

(C) After judgment, to carry the judgment into effect;

(D) After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an execution has been returned unsatisfied and the judgment debtor refuses to apply the property in satisfaction of the judgment;

(E) When a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;

(F) In all other cases in which receivers have been appointed by the usages of equity.

R.C. 2735.01 is a procedural statute and is to be liberally construed. *State ex rel. Petro v. Gold,* 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶ 66.

{¶ 9} R.C. 1313.56 also authorizes the appointment of a receiver in specific circumstances and provides as follows:

A sale, conveyance, transfer, mortgage, or assignment, made in trust or otherwise by a debtor, and every judgment suffered by him against himself in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion in whole or in part of others, and a sale, conveyance, transfer, mortgage, or assignment made, or judgment procured by him to be rendered, in any manner, with intent to hinder, delay, or defraud creditors, is void as to creditors of such debtor at the suit of any creditor. In a suit brought by a creditor of such debtor for the purpose of declaring such sale void, a receiver may be appointed who shall take charge of all the assets of such debtor, including the property so sold, conveyed, transferred, mortgaged, or assigned, and also administer all the assets of the debtor for the equal benefit of the creditors of the debtor in proportion to the amount of their respective demands, including those which are unmatured.

{¶ 10} BWC contends that the evidence in the record supports the trial court's decision to appoint a receiver pursuant to R.C. 2735.01(C) and (E) and R.C.

1313.56. The record undisputedly contains evidence that BWC holds judgments against appellant and that appellant's corporate existence has been dissolved. In addition to the Cooke affidavit, BWC attached to its motion a certificate from the Ohio secretary of state, showing that appellant has been dissolved. Thus, the record contains evidence satisfying the criteria of R.C. 2735.01(C) and (E). Further, BWC alleged in its complaint that appellant transferred substantially all of its assets to the other defendants with the intent to hinder, delay, or defraud BWC, and BWC sought avoidance of the alleged transfers to the extent necessary to recover from appellant. In such an action, pursuant to R.C. 1313.56, the trial court has discretion to appoint a receiver. Appellant does not argue that BWC failed to present evidence to satisfy the criteria of R.C. 2735.01(C) and (E) or that BWC did not allege claims described in R.C. 1313.56. Nevertheless, appellant contends that the trial court abused its discretion in appointing a receiver in this case.

{¶ 11} This court has cited with approval the Eighth District Court of Appeals' statement of general principles governing the appointment of a receiver in *Equity Ctrs. Dev. Co. v. S. Coast Ctrs., Inc.* (1992), 83 Ohio App.3d 643, 649–650, 615 N.E.2d 662. *Parker v. Elsass,* 10th Dist. No. 01AP–1306, 2002-Ohio-3340, 2002 WL 1380158, ¶ 59–60. The Eighth District stated that "[t]he appointment of a receiver is the exercise of an extraordinary, drastic and sometimes harsh power which equity possesses and is only to be exercised where the failure to do so would place the petitioning party in danger of suffering an irreparable loss or injury." *Equity Ctrs.* at 649, 615 N.E.2d 662, citing *Hoiles v. Watkins* (1927), 117 Ohio St. 165, 174, 157 N.E. 557. This court and other Ohio appellate courts have often reiterated the general rule that because the appointment of a receiver is an extraordinary remedy, the party requesting a receivership "must show by clear and convincing evidence that the appointment of a receiver is necessary for the preservation of the complainant's rights." *Malloy v. Malloy Color Lab, Inc.* (1989), 63 Ohio App.3d 434, 437, 579 N.E.2d 248. See also *Parker*; *Equity Ctrs.*; *Tessler v. Ayer* (Oct. 25, 1995), 1st Dist. No. C–940574, 1995 WL 621316; *Maines Paper & Food Serv.–Midwest, Inc. v. Regal Foods, Inc.* (Mar. 24, 1994), 8th Dist. No. 66262, 1994 WL 97620. An appellate court reviews an order appointing a receiver only to determine "whether there is evidence tending to prove the facts essential to sustain the order," and it may not review the weight of the evidence. *Parker* at ¶ 63. It may reverse the order only when there is failure of proof that would be essential to support the order. Id.; *Malloy* at 436, 579 N.E.2d 248.

{¶ 12} Appellant argues both that the trial court applied an incorrect legal standard when ruling on BWC's motion for appointment of a receiver and that the trial court abused its discretion in appointing a receiver. Ultimately,

appellant's argument, however framed, is basically that BWC failed to produce clear and convincing evidence demonstrating that appointment of a receiver was necessary for the preservation of its rights and that the trial court failed to consider whether a receiver was necessary to preserve BWC's rights.

{¶ 13} Appellant contends that to justify the appointment of a receiver, BWC had to demonstrate, through clear and convincing evidence, not only that one or more of the statutory bases for appointment of a receiver apply, but also that a receiver is necessary to protect or preserve BWC's rights. In response, BWC maintains that in light of its evidence tending to satisfy the criteria listed in R.C. 2735.01(C) and (E), as well as R.C. 1313.56, the trial court did not abuse its discretion by appointing a receiver. BWC suggests that appellant can demonstrate error in the trial court's decision to appoint a receiver only by showing a failure of proof with respect to the statutory criteria, i.e., by showing that BWC does not have judgments against appellant or that appellant has not been dissolved. We reject BWC's position and conclude that satisfaction of one or more of the statutory criteria does not automatically or necessarily entitle the movant to appointment of a receiver. While satisfaction of the statutory criteria gives rise to the trial court's discretion to decide whether to appoint a receiver, both R.C. 2735.01 and 1313.56 provide that in the enumerated circumstances, a court *may* appoint a receiver. Thus, the decision whether to appoint a receiver remains discretionary despite a demonstration that at least one of the statutory bases exists.

{¶ 14} We acknowledge that in certain circumstances, evidence necessary to meet one of the statutory criteria in R.C. 2735.01 may also establish the need for a receivership to protect the movant's rights. For example, to satisfy R.C. 2735.01(A), a movant must demonstrate that property or a fund that would be encompassed by the proposed receivership "is in danger of being lost, removed, or materially injured." In *Parker,* a divorce action, this court found no abuse of discretion in the appointment of a receiver when evidence revealed that the defendant-husband had transferred undisputed marital property to third parties to protect the property from potential claims of creditors, removing the property from the plaintiff-wife's reach. Under those facts, we agreed with the trial court that the plaintiff-wife had established by clear and convincing evidence that a receiver was necessary to preserve her rights in the property. In that case, the same evidence that brought the case within the ambit of R.C. 2735.01(A) also established the need for a receiver to protect the plaintiff's rights.

{¶ 15} Similarly, *Tessler* involved a receivership over certain property owned by a partnership in which the plaintiff-movant claimed a 1/6 ownership interest, where the other partner, allegedly acting as the partnership, transferred partnership properties to himself. The evidence demonstrated damage to the infrastruc-

ture of a parking garage, damage to steps leading to the parking garage, and harm to the physical appearance of a building on one of the properties subject to the receivership. The First District affirmed the appointment of a receiver, finding evidence of irreparable harm to the movant's rights. There, as in *Parker*, the evidence that satisfied the statutory criteria under R.C. 2735.01 also supported a finding that a receiver was necessary to protect the movant's rights.

{¶ 16} Unlike subsection (A) of R.C. 2735.01, subsections (C) and (E), upon which BWC premised its motion for appointment of a receiver, require only that the movant has a judgment against the defendant or that the defendant is dissolved, insolvent, in imminent danger of insolvency, or has forfeited its corporate rights. The facts required to meet subsections (C) and (E) do not give rise to an inference that a receiver is necessary to protect BWC's rights to recover from appellant. In our view, the General Assembly did not intend that a movant's possession of a judgment against a defendant or a defendant's dissolution or insolvency be, by itself, sufficient to justify the extraordinary remedy of a receivership. Indeed, in cases in which this court has reviewed appointments of receivers pursuant to R.C. 2735.01(C), we have discussed factors demonstrating the need for a receivership beyond the mere existence of a judgment in favor of the movant. *Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, at ¶ 67–68 (citing fiscal mismanagement as necessitating a receivership); *Heartland Bank v. LNG Resources, L.L.C.*, 10th Dist. No. 08AP–410, 2008-Ohio-6226, 2008 WL 5064943, ¶ 7, 9 (citing evidence showing that mortgaged property was in jeopardy as necessitating a receivership). Were the mere existence of a judgment sufficient to summarily reject any assertion of abuse of discretion, there would have been no need for the further analysis in which this court engaged.

{¶ 17} Here, BWC did nothing beyond establishing facts necessary to meet the requirements of R.C. 2735.01(C) and (E) and R.C. 1313.56. Although appellant opposed BWC's motion for appointment of a receiver by arguing that BWC had failed to establish by clear and convincing evidence the need for a receivership to preserve BWC's rights, BWC did not respond with any argument or evidence regarding the necessity of a receivership, relying instead solely on its satisfaction of the statutory criteria.

{¶ 18} The record in this case contains no evidence, let alone clear and convincing evidence, that a receiver was necessary for the preservation of BWC's rights. Under the specific facts of this case, neither BWC's judgments against appellant nor the dissolution of appellant gives rise to an inference that a receivership is required to prevent irreparable harm to BWC or to otherwise preserve BWC's rights. BWC obtained its judgments against appellant before it filed its complaint in this action. Additionally, in its complaint, BWC alleged that the fraudulent transfer of appellant's assets had already occurred and that

appellant had already been dissolved. Thus, each claimed that basis for a receivership existed when BWC initiated this action in June 2007. Nevertheless, BWC waited 16 months, until October 2008, before moving for the appointment of a receiver. BWC has not argued or presented any evidence of a change in circumstances that would suggest how its rights would now be threatened or impaired without the appointment of a receiver.

{¶ 19} Appellant submitted, and the trial court settled and approved, a statement of the trial court's informal hearing on BWC's motion for appointment of a receiver pursuant to App.R. 9(C). BWC did not object to the App.R. 9(C) statement, which is part of the record on appeal. The App.R. 9(C) statement simply reveals that the parties made the same arguments before the trial court that they make on appeal. BWC argued that it had ample evidence to justify appointment of a receiver because it had existing judgments against appellant and because appellant is a dissolved corporation, while appellant argued that BWC failed to produce any evidence demonstrating the need for a receiver, that there were assets over which a receiver could take control, or that BWC lacked an adequate remedy at law. With respect to the trial court's decision to appoint a receiver, the App.R. 9(C) statement states as follows:

In explaining his action, the Court specifically referenced the alleged debt and: (1) it did not foresee any harm or prejudice to [appellant] as a result of the appointment of a receiver, and (2) the receiver would only be permitted to look into the assets of [appellant] – the receiver would have no authority to interfere with the assets of the other Defendants in the lawsuit. The Court never verbalized that it was addressing the necessary elements to determine whether the appointment of a receiver was necessary; namely, whether the BWC met its evidentiary burden and whether the BWC had an adequate remedy at law.

{¶ 20} The App.R. 9(C) statement does not reveal that the trial court considered whether BWC had met its burden of demonstrating the need for a receiver by clear and convincing evidence. While the trial court found that the appointment of a receiver would not harm or prejudice appellant, it made no finding as to whether BWC's rights would be impaired without the appointment of a receiver. Moreover, as stated above, we discern no evidence in the record from which the trial court could have found that the appointment of a receiver was necessary to protect BWC's rights, given BWC's systematic denial of any obligation to produce such evidence.

{¶ 21} When the record lacks evidence tending to prove the facts essential to sustain a motion to appoint a receiver, including the necessity of a receiver to protect the movant's rights, a trial court abuses its discretion by appointing a receiver. In *Jensen v. Zanesville Heart Specialists, Inc.,* 5th Dist. No. CT2003-0043, 2004-Ohio-873, 2004 WL 362231, the court reversed the trial court's order

appointing a receiver where the evidence, in the form of a verified complaint, "[did] not address all the various issues a trial court is required to consider, before appointing a receiver" and where the judgment entry did not mention what evidence the court considered in granting the motion to appoint a receiver. See also *BFD Investors Inc. v. Hershey Pasta Group* (Mar. 16, 1995), 8th Dist. No. 67831, 1995 WL 116962 (noting that the party seeking appointment of a receiver must provide evidence of the necessity for a receiver and holding that the trial court had abused its discretion by appointing a receiver when the record contained no evidentiary materials at all).

{¶ 22} Here, the only evidence in the record is the three-paragraph affidavit of BWC's attorney. While that affidavit provides evidence that BWC has unpaid judgments against appellant and that appellant's corporate existence has been dissolved, it does not demonstrate the need for a receiver to protect BWC's rights while BWC's claims against appellant and the other defendants proceed through litigation. We remain cognizant that the appointment of a receiver is an extraordinary remedy reserved for situations in which it is necessary to prevent irreparable loss or injury to the moving party. This case is extraordinary only in its lack of any evidence demonstrating the necessity for a receiver. While we do not suggest that BWC *could* not produce evidence of necessity, it did not do so here. In the absence of evidence tending to show that a receiver is necessary to preserve or protect BWC's rights, we conclude that the trial court abused its discretion by ordering the appointment of a receiver over appellant. Accordingly, we sustain appellant's single assignment of error and reverse the judgment of the Franklin County Court of Common Pleas.

Judgment reversed.

BROWN, J., concurs.

MCGRATH, J., concurs separately.

MCGRATH, Judge, concurring separately.

{¶ 23} I agree with the majority that the law demands evidence of the need for appointing a receiver beyond simply meeting the statutorily required thresholds. However, I would not in any way suggest that the trial court here acted with an unconscionable attitude or arbitrarily. I would find that, given the paucity of evidence as to the need for a receiver beyond that evidence that established the statutory thresholds, the appointment of a receiver here could not be reasonably justified under the law.