**CLIFTON, Appellant,**

**v.**

**VAN DRESSER CORPORATION et al., Appellees.**

[Cite as *Clifton v. Van Dresser Corp.* (1991), 73 Ohio App.3d 202.]

Court of Appeals of Ohio,
Huron County.

No. H–90–4.

Decided April 19, 1991.

*William H. Bartle*, for appellant.

*Felix C. Wade, David A. Kadela* and *William J. Barath*, for appellee, Van Dresser Corporation.

*Kevin C. Smith*, for appellee, Benefit Plans Risk Management, Inc.

---

*Per Curiam.*

This matter is an appeal from summary judgment granted by the Huron County Court of Common Pleas in favor of appellees, Van Dresser Corporation, Van Dresser Corporation Employees Benefits Plan ("Benefits Plan"), and Benefit Plans Risk Management, Incorporated ("BPRM").

The facts of this case construed most strongly in favor of appellant, Patricia A. Clifton, are as follows. Clifton was employed by Van Dresser from July 1967 until January 1984. BPRM handled the administration of the medical insurance plan provided for employees of Van Dresser.

On January 27, 1984, Clifton took an indefinite leave of absence due to a non-work-related injury to her leg. Pursuant to a collective bargaining agreement, Clifton maintained medical insurance coverage by remitting $2.60 per week to Van Dresser for one year after she began her leave of absence. Beginning in January 1985, Clifton continued her medical insurance through Van Dresser by remitting the company $95.47 per month. The terms of the medical insurance plan provided that insurance coverage was effective until the last day of the month in which an employee is terminated.

In March 1985, Clifton was diagnosed as suffering from a reoccurrence of colon and rectal cancer. She was to be admitted to the Cleveland Clinic on April 10, 1985, for surgery scheduled the following day. Clifton contacted Janet Bergman, the personnel assistant for Van Dresser, concerning insurance coverage for the impending surgery. Bergman, after obtaining approval for the surgery from BPRM, told Clifton the surgery was covered by her insurance.

On April 5, 1985, Clifton remitted her usual monthly check to Van Dresser to continue medical coverage from April 11 through May 11, 1985. On April 9, 1985, Reid Meyers, director of human resources for Van Dresser, decided to terminate Clifton's medical insurance. Meyers sent a letter to Clifton, in which he returned her insurance premium check, confirming the termination of her medical insurance as follows:

"In light of the fact that you have recently been diagnosed as having another major illness, totally unrelated to the leg injury you subtained [sic] on January 27, 1984, we regret we can no longer carry you under our medical plan as this poses too great a burden on the Company.

"We are returning your insurance check dated 4–5–85 in the amount of $95.47 for coverage from 4–11–85 through 5–11–85. Since we have complied with contract provisions, Article 13, 13.03(B):

" 'Employees on an approved leave of absence resulting from medical or maternity may continue their insurance for a period of up to one year by making the required premium payment (employee's portion) to the payroll department by the 10th of each month.';

"and extended the courtesy of an extension period thru 4–11–85, we feel we have significantly dispensed our obligation.

"While we sympathize with your situation, it is necessary to inform you that effective 4–11–85, it will be necessary for you to acquire hospitalization coverage from an outside source. Any services performed after 4–11–85 will be your responsibility and/or the responsibility of any contracted provisioner [sic]."

Because Meyers was aware of Clifton's impending cancer surgery, he also arranged for Barb Burleson, a Van Dresser employee and Clifton's union representative, to inform Clifton of the company's decision by telephone the following day. On the morning of April 10, 1985, Clifton was preparing to leave for the Cleveland Clinic. At 8 a.m., Burleson telephoned Clifton and informed her of the company's decision to terminate her medical insurance effective the following day and warned Clifton she might be held liable for the surgery she had scheduled at the Cleveland Clinic.

On that same day, Clifton went to the Cleveland Clinic and informed her physician that her medical insurance coverage was to be cancelled the following day. Clifton asked her physician if there was a procedure that could be performed immediately, in lieu of the surgery scheduled for the following day. The physician informed her that the cancer surgery could not be performed immediately because Clifton had eaten breakfast that morning. Although a limited treatment was performed, Clifton did not undergo the necessary cancer surgery originally scheduled for April 11, 1985, due to her lack of medical insurance.

In June 1985, Clifton was examined by William Mourad, M.D. Clifton was found to be suffering from anxiety. Dr. Mourad was also worried about Clifton suffering a nervous breakdown and drug therapy was prescribed. Clifton was also examined by psychologist Joel Kestenbaum, Ph.D., who found that Clifton suffered from an aggravation of anxiety and depression and somatoform pain disorder. In both doctors' opinions, Clifton's mental health problems were caused by Van Dresser's cancellation of her insurance on the eve of her admission to the hospital for cancer surgery.

In February 1986, Clifton filed suit alleging breach of contract, bad faith insurance coverage, breach of fiduciary duty as an insurance provider, intentional infliction of emotional distress and negligent infliction of emotional distress against Van Dresser, the Benefits Plan and BPRM. The suit was removed to federal district court on the ground that a federal question was involved and that federal law preempted all state causes of action. In October 1986, the federal district court dismissed the suit on the ground that Clifton's causes of action were preempted by federal labor law. The federal district court also denied Clifton's motions for remand to the state court and to amend her complaint.

The case was subsequently appealed to the federal court of appeals. In April 1988, the federal court of appeals reversed the decision of the federal district court with respect to Clifton's causes of action for negligent and intentional infliction of emotional distress. The federal court of appeals also

instructed the federal district court to reconsider Clifton's motions for remand to the state court and to amend her complaint.

In October 1988, the federal district court granted Clifton's motion to remand the suit to the Huron County Court of Common Pleas. On remand, the trial court granted summary judgment in favor of Van Dresser, the Benefits Plan and BPRM. The trial court did not rule on Clifton's motion to amend her complaint.

It is from these judgments that Clifton raises the following seven assignments of error:

"A. It is error for a trial court to rule as a matter of law that the conduct of a party acting as a medical care insurer is not extreme, outrageous, and recklessly done when that party callously cancels a plaintiff's insurance coverage, notifying plaintiff on the morning she is to enter the hospital for cancer surgery when the hospitalization and surgery has been previously approved.

"B. Causes of action for negligent and intentional infliction of emotional distress which arise out of an employment or contract setting are not automatically barred.

"C. Causes of action for negligent and intentional infliction of emotional distress which relate to the manner in which appellee(s) terminate a plaintiff's medical insurance, rather than the mere decision to terminate the policy, do not arise out of an employment or contract setting, and hence cannot be barred on that basis.

"D. When a federal appeals court rules that a cause of action arises out of the method and manner in terminating hospitalization coverage, a party cannot relitigate that issue in the same case in a state court, after the case has been remanded.

"E. It was error for the trial court not to reconsider and grant plaintiff's motion for leave to file her first amended complaint.

"F. It was error to dismiss the defendant, Van Dresser Corporation Employees Benefits Plan. As plaintiff properly stated a cause of action which could be pursued in state court pursuant to 29 USC Section 1132(e)(1).

"G. Defendant, Benefit Plans Risk Management, Inc. is liable for the negligent and intentional acts of Van Dresser Corporation since both these defendants were engaged in a joint enterprise with respect to providing hospitalization insurance coverage to plaintiff."

This court would initially note that all of Clifton's assignments of error stem from the granting of summary judgment by the trial court. Civ.R. 56(C) provides that summary judgment is appropriate only if it appears "that

reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made * * *." Further, In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio stated the following requirements for granting a motion for summary judgment:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

As her first assignment of error, Clifton argues that the trial court erred in granting summary judgment as to her claim for intentional infliction of emotional distress.

The definition in 1 Restatement of Law 2d, Torts (1965) 71, Section 46(1) of the tort of intentional infliction of emotional distress was adopted by the Supreme Court of Ohio in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, in the syllabus, as follows:

"One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

In explaining this standard, the *Yeager* court further quoted the Restatement, *supra*, at 73, comment *d*, as follows:

" ' * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " *Yeager, supra*, at 374–375, 6 OBR at 426, 453 N.E.2d at 671.

Further, the Restatement, *supra*, at 77, comment *i*, defines "intention" as knowledge that severe emotional distress "is certain, or substantially certain,

to result from his conduct," and defines "recklessness" as a "deliberate disregard of a high degree of probability that emotional distress will follow."

■ In the present case, Van Dresser's personnel assistant obtained approval of insurance coverage for Clifton's pending cancer surgery. Van Dresser's director of human resources also knew Clifton was scheduled to enter Cleveland Clinic for cancer surgery on April 10, 1985 when he made the decision to cancel her insurance effective April 11, 1985. Such decision was contrary to the terms of the insurance plan itself, which provided that insurance coverage was effective until the last day of the month in which an employee was terminated. Further, Van Dresser's director of human resources arranged for Clifton's union representative to inform Clifton, on the morning she was scheduled to enter the Cleveland Clinic, that her medical insurance was terminated effective the following day. We find that reasonable men may differ as to whether such conduct is extreme and outrageous, and whether such conduct manifests the requisite intent, so as to impose liability for the tort of intentional infliction of emotional distress. Therefore, we find summary judgment as to Clifton's cause of action for the intentional infliction of emotional distress was improper. Accordingly, we find Clifton's first assignment of error well taken.

■ Clifton's second, third and fourth assignments of error will be considered together, as they address the trial court's propriety in granting summary judgment as to Clifton's cause of action for negligent infliction of emotional distress.

In *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, the Supreme Court of Ohio recognized a cause of action for the negligent infliction of emotional distress. The scope of this tort was subsequently addressed in *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, in paragraph 3b of the syllabus, as follows:

"The factors to be considered in order to determine whether a negligently inflicted emotional injury was reasonably foreseeable include: (1) whether the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) whether the plaintiff and victim (if any) were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship."

In both *Schultz* and *Paugh,* there was threat of physical peril brought about by the tortfeasor's negligence that caused the serious emotional dis-

tress suffered by the plaintiff. In *Brown Deer Restaurant, Inc. v. New-market Corp.* (Mar. 28, 1985), Cuyahoga App. No. 48910, unreported, 1985 WL 9802, the court held that the *Schultz* and *Paugh* cases "make clear that they allow recovery only when the victim, or someone closely related to the victim, faced physical peril." See, also, *Corona v. Sears, Roebuck & Co.* (May 4, 1988), Southern District of Ohio No. C–2–87–1042, unreported, 1988 WL 242556 (applying Ohio law).

In the present case, Van Dresser's alleged negligence consisted of the manner in which it had wrongfully informed Clifton that her medical insurance was being cancelled. We do not find such circumstances are sufficient to establish a claim for the negligent infliction of emotional distress as that tort is presently recognized under Ohio law.

■ Clifton also argues that the decision of the federal court of appeals, in finding that Clifton's claims for emotional distress were not preempted by federal law, precludes relitigation of the issues involving such claims. However, the decision of the federal court of appeals was limited to a finding that Clifton's claims for emotional distress did not involve an interpretation of the collective bargaining agreement and therefore were not preempted by federal labor law. The issue of whether the facts of Clifton's suit amounted to a recognizable claim under Ohio law for negligent infliction of emotional distress was not addressed by the federal court of appeals. Therefore, such issue was properly before the trial court. Accordingly, Clifton's second, third and fourth assignments of error are found not well taken.

As her fifth assignment of error, Clifton argues that the trial court abused its discretion in failing to permit Clifton to amend her complaint. The trial court rendered summary judgment in favor of the appellees without addressing Clifton's motion to amend her complaint.

In light of our finding Clifton's first assignment of error well taken, we find the trial court should reconsider Clifton's motion to amend her complaint. Accordingly, Clifton's fifth assignment of error is found well taken.

■ As her sixth assignment of error, Clifton argues that the trial court erred in dismissing the Benefit Plan. The trial court *sua sponte* dismissed the Benefit Plan on the ground that it was another name by which BPRM, the company that administered Van Dresser's medical insurance plan, was known.

The Benefit Plan did not move for summary judgment in the court below. In fact, there has been little or no participation by a representative of the Benefit Plan in the various matters filed in the present action. However, from the scant evidence before this court, it is questionable whether the Benefit Plan and BPRM are one and the same legal entities. Therefore, we

find questions of fact remain as to the Benefit Plan's existence as an entity separate and apart from BPRM. Accordingly, Clifton's sixth assignment of error is found well taken.

■ As her seventh assignment of error, Clifton argues that the trial court erred in granting summary judgment in favor of BPRM. Clifton specifically argues that BPRM, as the company that administered Van Dresser's medical insurance plan, is liable as a party to a joint venture for Van Dresser's tortious acts.

■ A joint venture exists where each party to an enterprise can direct and control all aspects of the enterprise. *Bloom v. Leach* (1929), 120 Ohio St. 239, 244, 166 N.E. 137. Where a joint venture exists, each party to the venture is liable for the tortious acts of the other committed within the scope of the business of the venture. See *Vrabel v. Acri* (1952), 156 Ohio St. 467, 472, 46 O.O. 387, 389–390, 103 N.E.2d 564, 567.

In the present case, Van Dresser contracted for BPRM's services to administer Van Dresser's medical insurance plan for Van Dresser employees. BPRM had no authority to decide which Van Dresser employees should participate in the medical insurance plan, nor did BPRM have the authority to terminate an employee's medical insurance. Further, Van Dresser had no authority to direct the actions of BPRM's employees. Therefore, we find BPRM and Van Dresser were not engaged in a joint venture, and BPRM cannot be held liable for the torts, if any, of Van Dresser. Accordingly, Clifton's seventh assignment of error is found not well taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining and the judgment of the Huron County Court of Common Pleas is affirmed in part and reversed in part. It is ordered that appellee, Van Dresser Corporation, pay the court costs of this appeal.

*Judgment affirmed in part*
*and reversed in part.*

HANDWORK, P.J., GLASSER and MELVIN L. RESNICK, JJ., concur.