Plaintiffs-appellants, Carolyn Morgan ("Carolyn") and Richard Morgan, appeal a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Taft Place Medical Center, Inc. ("Taft Place"), in a dispute arising from Carolyn's termination as a Taft Place employee. We affirm.
On December 14, 1987, Carolyn began her employment at Taft Place. Her work included billing insurance companies and Medicare for medical services and transcribing physician summaries. In February 1995, Carolyn began to experience a gastrointestinal illness and migraine headaches. In addition to her physical ailments, Carolyn was diagnosed by a psychiatrist with clinical depression.
From February 14, 1995 until March 14, 1995, Carolyn was absent from the office due to her illnesses. From February 14, 1995 until February 27, 1995, Carolyn's absences were covered by accumulated vacation time and sick time. On February 27, 1995, the office manager for Taft Place, Shari Bailey, requested a physician's excuse for Carolyn's future absences and agreed that Carolyn would report on the status of her illness weekly. Carolyn never presented any physician excuse to Bailey until the day she was fired on March 14, 1995.
On March 7, 1995, Carolyn came to the office to return billing she had brought home to complete and to get new work. Carolyn briefly had a conversation with Bailey about her health. Carolyn told Bailey that she was still sick and described some of her physical symptoms, but never mentioned the depression. During one conversation, Carolyn did state she was taking antidepressants for the migraine headaches.
On Friday, March 10, 1995, Bailey mailed Carolyn an employee handbook and forms to complete for a formal medical leave. In the handbook, Bailey highlighted a daily reporting requirement for an extended absence. According to Carolyn, Bailey told her "to mail [the forms] back to [Bailey] or get it back to [Bailey] Monday." Carolyn did not recall "the exact words" Bailey used. These forms arrived at Carolyn's home on Monday, March 13, 1995. On Monday afternoon, Carolyn called Bailey and told her that she could not return the medical release forms that day. On Tuesday, March 14, 1995, Bailey, along with one of the Taft Place medical physicians, decided to terminate Carolyn from her employment with Taft Place. Bailey testified that "the decision was made to terminate Carolyn because she did not return the forms that I has asked for and because she did not communicate with me or the physicians about her absence and when she would expect to return to work."
Later that day, Bailey went to Carolyn's home with another employee of Taft Place, Paula Dabbelt, to terminate Carolyn's employment. Carolyn's husband, Richard Morgan, invited Bailey and Dabbelt into appellants' home, but Richard did not witness the eventual termination. According to Bailey, the termination was done at Carolyn's home, without an appointment, to ensure the office billing was returned. When Bailey and Dabbelt arrived, Carolyn returned the billing she had brought home to complete and an office key. Carolyn provided three physician excuses for her absences, but Bailey told Carolyn that it was "too late" and that she was being terminated. According to Carolyn, besides "hi and goodbye," Bailey did not carry on any other conversation with Carolyn.
On January 16, 1997, appellants filed a complaint alleging Taft Place terminated Carolyn because of a handicap in violation of R.C. 4112.02(A). On July 16, 1997, appellants moved for leave to amend the complaint to include the additional counts of tortious interference with an employment relationship, the intentional infliction of emotional distress, and loss of consortium. On July 21, 1997, the court granted appellants' motion for leave to amend the complaint. On September 2, 1997, Taft Place filed a motion for summary judgment. On September 5, 1997, appellants filed an amended complaint. On November 7, 1997, the court granted summary judgment in favor of Taft Place on all of appellants' causes of action. Appellants filed a timely notice of appeal and present a sole assignment of error for our review.
Appellants argue that the trial court erred in granting summary judgment because, in each count of the complaint, material issues of fact are in dispute. Specifically, appellants note factual disputes surrounding the impact Carolyn's depression had on Taft Place's decision to terminate her, whether the method of termination constituted the intentional infliction of emotional distress, and whether Taft Place interfered with an employment relationship by releasing information without Carolyn's permission. We will review each issue separately.
Pursuant to Civ.R. 56(C), "[t]he appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. This court reviews a trial court decision to grant summary judgment de novo. Jones v. Shelley Co. (1995), 106 Ohio App.3d 440, 445.
Appellants claim a material factual dispute exists about whether Carolyn was wrongfully discharged due to her depression. In Ohio, unlawful discriminatory discharge is governed by R.C.4112.02(A), which states that:
It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the * * * handicap * * * of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any manner directly or indirectly related to employment.
To establish a prima facie case of wrongful termination due to a handicap, a plaintiff must show that (1) the plaintiff is handicapped; (2) the plaintiff was terminated, at least in part, due to her handicap; and (3) the plaintiff can still safely and substantially perform the essential elements of her employment. Hood v. Diamond Products, Inc. (1996), 74 Ohio St.3d 298, 302, citing Hazlett v. Martin Chevrolet, Inc. (1986), 25 Ohio St.3d 279,281.
The trial court granted summary judgment on the wrongful discharge count because Carolyn "presented no evidence that defendant discharged [Carolyn] from her employment because of her handicap." (Emphasis added.) Assuming Carolyn's depression constituted a handicap, we agree with the trial court that there is no evidence the depression was a factor in Taft Place's decision to terminate Carolyn. Appellants argue that one interpretation of the evidence is that Taft Place terminated Carolyn due to her depression and used her extended absence, failure to promptly provide a physician excuse, and failure to return the medical leave forms as a pretext for the termination. Further, Carolyn argues that Taft Place "would be sensitive to and recognize that the onset of a seemingly acute illness might actually be a handicapping condition."
A review of the record indicates that Carolyn never told Bailey, or anyone else working at Taft Place, about her diagnosis of depression. Bailey was aware that Carolyn was suffering from physical ailments, including migraine headaches. Carolyn told Bailey she was taking antidepressants for migraine headaches. However, Bailey had no reason to think that Carolyn was suffering from depression. The record cannot reasonably support the conclusion that Bailey somehow diagnosed the depression and factored the depression into the decision to terminate Carolyn's employment.
Appellants next claim that the facts could reasonably support a finding that Bailey, as an agent of Taft Place, intentionally or recklessly inflicted emotional distress on Carolyn during the termination at appellants' home on March 14, 1995. Ohio has adopted the Restatement standard for the intentional infliction of emotional distress, which states that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Yeager v. Local Union 20 (1983),6 Ohio St.3d 369, 374, citing Restatement of the Law 2d, Torts (1965) 71, Section 46(1). The Yeager court also noted that:
 It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
Id. at 374-75, citing Restatement, at section 46, comment d.
The undisputed facts are that Bailey arrived, without an appointment, to appellants' home with another employee, Dablett. Dablett's sole purpose was to act as a witness to the termination. Bailey decided to fire Carolyn at her home, without an appointment, to ensure some office billing was recovered. According to Bailey, Carolyn had the only copies of the billing. Bailey asked Carolyn for the billing and an office key. Carolyn told Bailey she was ill and showed Bailey an appointment card for a physician. Bailey told her it was "too late," fired Carolyn and, upon Carolyn's request, promptly left appellants' home. According to Carolyn, Bailey did not engage her in any other conversation. There was no verbal abuse or any physical altercation.
Richard F. Reckman, a psychologist who has recently treated appellant for her depression, concluded that the termination was a factor in Carolyn's depression. Reckman also felt Carolyn's depression was due to "family history from which we infer a genetic predisposition to depression" and a post-partum depression. Carolyn testified that being fired made her "feel like a failure," but also stated that the depression may date to her childhood.
Appellants attempt to analogize this case to Clifton v. Van Dussen Corp. (1991), 73 Ohio App.3d 202. In Clifton, a former employee maintained health coverage with an employer. Id. at 209. The employer was aware that the former employee was scheduled for cancer surgery on April 10. Despite this fact, the employer canceled the health insurance on April 9. Due to the cancellation, the former employee did not receive all the necessary cancer surgery on April 11. The Sixth District Court of Appeals found summary judgment inappropriate because a trier of fact might consider the employer's conduct reckless or intentional. Id.
This case, by contrast, fails because there is no evidence Bailey recklessly or intentionally engaged in conduct to inflict emotional distress upon Carolyn. The record indicates Carolyn was terminated at her home in order for Taft Place to recover office billing. Bailey's actions cannot be reasonably described as "beyond all possible bounds of decency." Yeager,6 Ohio St.3d at 375. Beyond the inherently unpleasant circumstances of any termination, the language and tone of Bailey was not offensive or abusive. Unfortunately, Carolyn's termination, in whatever location it took place, was likely to be an upsetting episode. However, the facts do not indicate that the actions of Bailey were extreme or outrageous. Id. at 374.
Next, appellants assert there are genuine issues of material fact about whether Taft Place interfered with an actual or potential business relationship of Carolyn. The claim of tortious interference with a prospective business relationship requires "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." Wolf v. McCullough-Hyde Memorial Hosp. (1990),67 Ohio App.3d 349, 355.
In this case, Carolyn gave permission to Taft Place to provide information to Clayton L. Scroggins Associates and Dabe Medical Services, two potential employers for Carolyn. Later, Carolyn asked a friend, Terry Hull Garbutt, to call Bailey "to see what [Bailey] was saying." Bailey told Garbutt that Carolyn was an excellent worker, but she would never rehire her due to attendance problems. Appellants insist that Bailey's actions constitute interference with a potential business relationship because Carolyn never gave permission for any information to be released to Garbutt. This argument is fatally flawed because Garbutt was not an actual or potential employer of Carolyn. Goldfarb v. The Robb Report, Inc. (1995), 101 Ohio App.3d 134,142. Appellants cannot point to a single instance of a potential employer being provided information without Carolyn's consent.
Finally, since Richard Morgan's claim for consortium is derivative, "the claim is dependent upon [Taft Place] having committed a legally cognizable tort" upon Carolyn. Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 93. Since the other three claims cannot survive summary judgment, the consortium claim cannot stand alone. Accordingly, the sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.