OPINION *Page 2 
{¶ 1} Defendants-Appellants Valerie Swiatek, Victoria Bonner and Deborah Bonner appeal from the order of the Delaware County Court of Common Pleas to grant the motion of Plaintiff-Appellee William Westbrook to appoint a receiver over certain real estate projects.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} Charles "Bill" Bonner was a prominent real estate developer in central Ohio. In 1999, Appellee brought his many years of success in the real estate development market to Mr. Bonner and the two entered into a business relationship. This business relationship was memorialized by a Memo of Understanding signed by Mr. Bonner and Appellee on or about June 24, 1999. The Memo of Understanding was drafted by Mr. Bonner. The Memo of Understanding was not formalized into a partnership or joint venture agreement.
 {¶ 3} The general terms of the Memo of Understanding were such that Mr. Bonner, through his corporate entities, would provide the financing for the purchase of property found by and to be developed by Appellee. The pertinent terms of the Memo of Understanding were as follows. Pursuant to a "Standard Deal," wherein Appellee found and developed the deal and Mr. Bonner provided the financing, Appellee would receive 30% of the profits, Bonner Interests would receive 65% and Michael Suhovecky (Mr. Bonner's accountant) would receive 5%. A losing transaction would result in zero gain or loss to Appellee. On "Sour Deals" where there was money fronted but no deal made, Bonner Interests would take 100% of the loss. Mr. Bonner could continue to do deals on his own, with or without Appellee. Mr. Bonner provided Appellee with *Page 3 
administrative support such as office space and accounting services. Appellee was considered an employee of one of Mr. Bonner's corporate entities to the extent necessary to qualify Appellee under the corporation's health coverage plan. "The remainder of his status will be as an independent contractor, associate, officer and/or partner depending on the particulars of each deal." (Memo of Understanding, Working Relationship).
 {¶ 4} Appellee and Mr. Bonner operated under the terms of the Memo of Understanding until Mr. Bonner's death in 2003. Before Mr. Bonner's death, Mr. Bonner reorganized the corporations' board of directors and appointed Appellants, Mr. Bonner's daughters, to the board in addition to three outside directors. Appellants continued the real estate projects pending with Appellee after their father's death and initiated new projects with Appellee.
 {¶ 5} From 1999 to 2004, the Bonner Companies purchased approximately 300 acres of land to comprise the "Cobbleton Property." Bonner Companies invested millions of dollars in the development of the property to be sold to residential homebuilders and commercial builders. Appellee acted as the project manager of the Cobbleton Property development pursuant to the terms of the Memo of Understanding. He met with Appellants weekly to update Appellants on the status of the development of the property. Under the initial development plan, Dominion Homes was to purchase 879 lots of the Cobbleton Property for residential purposes, but because of various issues, the Dominion Homes purchase did not result in the profits originally intended. The housing market collapse has further served to render the Cobbleton Property inactive and undeveloped. *Page 4 
 {¶ 6} Appellee was also the project manager of a Bonner Companies' property purchase termed the "Huntley Property." Appellee's involvement in that project was also pursuant to the terms of the Memo of Understanding, but with his profit margin at 40%. The Huntley property is also currently undeveloped.
 {¶ 7} In June 2005, Appellants notified Appellee that they intended to downsize the active real estate development operations of the Bonner Companies. (Plaintiff's Exhibit 7). Appellants informed Appellee that they were terminating the Memo of Understanding except with respect to current projects, including the Cobbleton and Huntley properties. In September 2006, Appellants informed Appellee that he was no longer authorized to act in any representative capacity on either the Cobbleton or Huntley properties. (Plaintiff's Exhibits 9-10).
 {¶ 8} On August 1, 2006, Appellee filed a complaint against Appellants. In his complaint, Appellee requested declaratory judgment regarding his interest in the "Venture Properties,"[1] action for account, dissolution and winding up of the venture, breach of fiduciary duty, injunctive relief, appointment of receiver and partition. On September 29, 2006, Appellee filed a motion for appointment of a receiver wherein he requested that a receiver be appointed to manage the affairs and ongoing development of the "Venture Properties." Appellee argued that Appellants' mismanagement of the Venture Properties would destroy the value of the hours he contributed to the development of those Venture Properties and therefore an appointment of the receiver was necessary to prevent that damage. Appellants filed a responsive brief arguing that while Appellee characterized the business relationship of Mr. Bonner and Appellee as a *Page 5 
partnership, the Memo of Understanding created no such relationship and therefore a receiver could not be appointed to manage the properties at issue.
 {¶ 9} The trial court referred the matter to the magistrate and an evidentiary hearing on the motion was held on May 11 and 14, 2007. The focus of the hearing was the Cobbleton and Huntley properties. The magistrate issued a decision on May 30, 2007, finding Appellants were not competent to manage the Cobbleton and Huntley projects and therefore a receiver should be appointed to protect Appellee's economic interests in the projects. The magistrate determined that it was not the direction of the receivership hearing to determine whether a partnership existed between the parties, but there was clear and convincing evidence that the parties had some joint interests in the projects by virtue of the Memo of Understanding. The magistrate further decided that because Appellee's interests warranted protection, the only way the court could guarantee protection was through the appointment of a receiver. (Magistrate's Decision, May 30, 2007).
 {¶ 10} Appellants filed objections to the magistrate's decision on June 13, 2007. While Appellants' objections were pending before the trial court, Appellee filed a motion requesting the trial court adopt the magistrate's decision as an interim order. Pursuant to Civ. R. 53(D)(4)(e)(ii), the trial court adopted the magistrate's decision as an interim order for a period of twenty-eight days. On September 11, 2007, the trial court extended the first interim order upon Appellee's motion for an additional twenty-eight days. Appellants filed a notice of appeal of the trial court's interim orders on September 12, 2007. *Page 6 
 {¶ 11} The trial court approved the magistrate's decision on October 16, 2007. Appellants filed a notice of appeal of that decision. This Court granted Appellants' motion to consolidate the two appeals.
 {¶ 12} Based upon the trial court's decisions, Appellants raise eight Assignments of Error:
 {¶ 13} "I. THE TRIAL COURT ERRED IN APPOINTING A RECEIVER OVER A `PROJECT', WHICH IS NOT AN ASSET THAT CAN BE PLACED INTO RECEIVERSHIP.
 {¶ 14} "II. THE TRIAL COURT ERRED IN APPOINTING A RECEIVER PRIOR TO TRIAL WHERE THE EVIDENCE INDICATED ONLY THAT PLAINTIFF WAS A POSSIBLE FUTURE CREDITOR.
 {¶ 15} "III. THE TRIAL COURT ERRED IN APPOINTING A RECEIVER WHERE THERE WAS NO EVIDENCE PRESENTED (1) OF ANY IMPENDING LOSS, DAMAGE, OR MATERIAL INJURY TO ANY PROPERTY, OR (2) ANY IMPENDING IRREPARABLE LOSS TO PLAINTIFF.
 {¶ 16} "IV. THE TRIAL COURT ERRED IN ORDERING REAL ESTATE TO BE BROUGHT UNDER THE CONTROL OF A RECEIVER TO BE THE NEW DEVELOPER OF A TEN-YEAR PROJECT MERELY BECAUSE IT IS DOUBTFUL OF THE MANAGEMENT SKILLS OF THE PRINCIPALS OF THE COMPANIES THAT OWN THE REAL ESTATE.
 {¶ 17} "V. THE TRIAL COURT ERRED IN FINDING A `DEADLOCK' WHERE NO EVIDENCE WAS PRESENTED THAT PLAINTIFF EVEN HAD SUFFICIENT AUTHORITY TO CREATE A DEADLOCK. *Page 7 
 {¶ 18} "VI. THE TRIAL COURT ERRED IN APPOINTING A RECEIVER WITHOUT SETTING A BOND AS REQUIRED BY R.C. 2735.03.
 {¶ 19} "VII. THE TRIAL COURT ERRED IN ORDERING THAT INDIVIDUAL DEFENDANTS WHO DO NOT OWN ANY OF THE PROPERTY AT ISSUE TO PAY THE EXPENSES OF THE RECEIVER.
 {¶ 20} "VIII. THE TRIAL COURT ERRED IN ISSUING THE FIRST AND SECOND INTERIM ORDERS WHERE NO EVIDENCE WAS PLACED BEFORE THE COURT OF ANY IMPENDING LOSS THAT WAS ABOUT TO HAPPEN."
 {¶ 21} We will address the Appellants' Assignments of Error together as they all pertain to the propriety of the order granting a receivership pursuant to R.C. 2735.01. As a general matter, Appellants argue the trial court erred in approving the magistrate's decision to appoint a receiver over the Cobbleton and Huntley properties. We agree.
 {¶ 22} R.C. 2735.01 governs the appointment of receivers. It states, in relevant part:
 {¶ 23} "A receiver may be appointed by * * * the court of common pleas or a judge thereof in his county, * * *, in causes pending in such courts respectively, in the following cases:
 {¶ 24} "(A) In an action by a vendor to vacate a fraudulent purchase or property, or by a creditor to subject property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured; *Page 8 
 {¶ 25} "* * *
 {¶ 26} "(F) In all other cases in which receivers have been appointed by the usages of equity."
 {¶ 27} The appointment of a receiver is the exercise of an extraordinary, drastic and sometimes harsh power which equity possesses and is only to be exercised where the failure to do so would place the petitioning party in danger of suffering an irreparable loss or injury.Hoiles v. Watkins (1927), 117 Ohio St. 165, 174, 157 N.E. 557, 559. Because the appointment of a receiver is such an extraordinary remedy, the party requesting the receivership must show by clear and convincing evidence that the appointment is necessary for the preservation of the complainant's rights. Malloy v. Malloy Color Lab, Inc. (1989),63 Ohio App.3d 434, 437, 579 N.E.2d 248, 250.
 {¶ 28} It has long been recognized that the trial court is vested with sound discretion to appoint a receiver. State ex rel. Celebrezze v.Gibbs (1991), 60 Ohio St.3d 69, 73, 573 N.E.2d 62, 66. InGibbs, the Ohio Supreme Court stated:
 {¶ 29} "A court in exercising its discretion to appoint or refuse to appoint a receiver must take into account all the circumstances and facts of the case, the presence of conditions and grounds justifying the relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies." Id. at 73, 573 N.E.2d at 67, fn. 3.
 {¶ 30} The order for an interim receiver may be reviewed only for the purpose of determining whether there is evidence tending to prove the facts essential to sustain the order, and a reviewing court may not consider the weight of the evidence. Malloy v. Malloy Color Lab.,Inc. (1989), 63 Ohio App.3d 434, 436, 579 N.E.2d 248, 249. The trial *Page 9 
court is vested with sound discretion to appoint a receiver and the appointment will not be disturbed absent a clear abuse of discretion.Gibbs, at 73. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 31} Appellants contend the trial court erred in failing to identify the specific interest held by Appellee which warranted the appointment of a receiver. In Equity Ctrs. Dev. Co. v. S. Coast Ctrs., Inc. (1992),83 Ohio App.3d 643, 650-651, 615 N.E.2d 662, the Eighth District Court of Appeals reversed the decision of the trial court to appoint a receiver over partnership assets under similar circumstances. The court held:
 {¶ 32} "We, therefore, conclude the trial court abused its discretion in appointing a receiver over the partnerships in question. The record before us does not, and indeed cannot, support the trial court's decision which expressly notes it was not making any determination with respect to the rights, claims and charges made by and between the parties while, at the same time, concluding that the `applicants' rights and interests could likely be adversely affected.' Without making a determination of the applicants' rights, we cannot see how the trial court can conclude that the appointment of a receiver is necessary for the preservation of those rights. In reaching this decision, we are also mindful that the party requesting such receivership must show by clear and convincing evidence that the appointment is necessary for the preservation of the complaints' rights. Malloy, supra, at 437,579 N.E.2d at 250. Similarly, the trial court abused its discretion in appointing the receiver where the applicants' rights and interests, which have yet to be determined, could likely be adversely affected, absent appointment of a *Page 10 
receiver. The trial court's determination that the applicants' rights could likely be affected simply does not meet the standard that the appointment of the receiver is necessary for the preservation of the applicants' rights."
 {¶ 33} This holding was approved by the First District Court of Appeals in Tessler v. Ayer wherein the court stated, "* * * the Appellants assert that the appointment of the receiver should fail because the trial court failed first to determine who held title to the Hillcrest Tower. Appellants correctly cite to Equity Ctrs. Dev. Co. v.S. Coast Ctrs., Inc. (1992), 83 Ohio App.3d 643, 650-51, 615 N.E.2d 662,667, for this proposition." Tessler v. Ayer (Oct. 25, 1995), 1st Dist. Nos. C-940574, C-940632, C-940780.
 {¶ 34} We find the reasoning of Equity applies to this case. In the underlying decision, the magistrate concluded, and the trial court approved the conclusion, that, "[i]t was not the direction of this hearing to determine whether or not a partnership existed between the Plaintiff and the Defendants other than for the determination that there is some joint interest that would enable the Court to entertain the issue of appointing a receiver. Without finding that a partnership existed, the Court finds by clear and convincing evidence that the Plaintiff, either a partner, co-venturer, or other joint interest, has economic interest in the projects." The magistrate further held, "[t]he Court concludes by clear and convincing evidence that the parties have some joint interests in the Cobbleton and Huntley Projects by virtue of the relationship formed, and the performance under the Memo of Understanding. The conduct of both parties confirms this joint venture confirmed under the Memo of Understanding * * *." (Magistrate's Decision, May 30, 2007). The trial court also concluded in its judgment entry approving the magistrate's decision that the evidence showed Appellee had a legal or equitable *Page 11 
interest in the projects. These conclusions regarding Appellee's interest in the projects raise a threshold question before this Court as to the appropriateness of the application of R.C. 2735.01(A) to this matter.
 {¶ 35} The record before us indicated that the parties do not dispute that Appellee does not have legal title to the Cobbleton and Huntley properties. (T. 136, 192). The Cobbleton and Huntley properties are titled in the names of the various Bonner corporations. (T. 191). Appellee argues his interest in the projects is by virtue of a partnership and/or joint venture created by the Memo of Understanding.[2] We will examine both of Appellee's contentions.
 {¶ 36} A partnership is an association of two or more persons to carry on a business for profit as co-owners. R.C. 1775.05(A). Unless otherwise provided in the partnership agreement, the partnership is dissolved by the death of a partner. R.C. 1775.30(D). As an initial matter, no written or oral partnership contract was presented to the court in this case. The Memo of Understanding, even if assumed to be an agreement, does not provide for continuation of the business relationship upon death of Mr. Bonner. Appellee argues the Appellants continued to perform under the Memo of Understanding after the death of their father, thereby evidencing a subsequent partnership between the parties. However, there was no evidence before the trial court that the parties followed statutory requirements for the transfer of Mr. Bonner's alleged partnership interest as set forth in R.C. Chapter 1779 or that monies earned by Appellee were reported as partnerships profits for federal tax purposes. *Page 12 
 {¶ 37} The Ohio Supreme Court defines a "joint venture" as: "[A]n association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure." Ford v. McCue (1955),163 Ohio St. 498, 504, 127 N.E.2d 209, syllabus.
 {¶ 38} Thus, the major distinction between a joint venture and partnership is that a joint venture relates to a single enterprise while a partnership relates to a continuing business. Joint ventures are created by contract and do not contemplate a continuing relationship. Additionally, a joint venture does not exist unless both parties have the equal authority and the right to direct and control all aspects of the enterprise. Clifton v. Van Dresser Corp. (1991), 73 Ohio App.3d 202,211, 596 N.E.2d 1075. Another chief characteristic of a joint venture is the joint, and not several, sharing of profits and losses.Ford, 163 Ohio St. at 503. It does not appear from the evidence adduced at the hearing that the business relationship between Appellee and Mr. Bonner or Appellants met the test of a joint venture.
 {¶ 39} In sum, we find the proposed receivership does not serve the statutory purposes for which a receiver could be appointed. Appellee did not establish a probable right or interest in the properties at issue. A receiver cannot protect Appellee's rights or interests until those rights or interests are established. Equity, *Page 13 83 Ohio App.3d at 667 ("Without making a determination of the applicants' rights, we cannot see how the trial court can conclude that the appointment of a receiver is necessary for the preservation of those rights."). It appears the trial court in this matter left that determination for a later day. At the receivership hearing the evidence demonstrated that, at most, Appellee potentially has an interest in the profits, if any, generated from the future development of the Cobbleton and Huntley properties. See, Tarantino v. Portale, 174 Ohio App.3d 749,2008-Ohio-315, 884 N.E.2d 659, ¶ 10; Atac Corp. v. Shetty (Feb. 13, 1997), 8th Dist. Nos. 70865, 70904 ("Although plaintiff may eventually be able to obtain a judgment on the promissory note, this is not a specific fund. Plaintiff must show an interest in a specific fund. As this Court in Maines Paper held, `cash receipts from the operation of its restaurants' do not constitute a `fund' as `prospective earnings [are] not property and, thus not subject to receivership.' Id. at 4.").
 {¶ 40} Thus, we cannot find clear and convincing evidence tending to prove the facts essential to sustain the order appointing a receiver. Appellants' Assignments of Error are sustained. *Page 14 
 {¶ 41} The order of the Delaware County Court of Common Pleas granting the motion to appoint a receiver is vacated; and the case is remanded for further proceedings consistent with this opinion.
[1] Appellee termed the properties developed pursuant to the terms of the Memo of Understanding to be "Venture Properties."
[2] Appellee continually vacillates in defining his interests in the Cobbleton and Huntley projects as a partnership, a joint venture, and a co-ownership. This position was maintained at hearing before the Magistrate wherein Appellee's counsel stated: "You're going to hear that there was a deal, an understanding, a co-ownership, a partnership, a venture, or whatever you want to call it to carry on business as co-owners for a profit." (T. at 11.). Delaney, J. Farmer, P. J. and Edwards, J. concur. *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the order of the Delaware County Court of Common Pleas is vacated and cause remanded for further proceedings consistent with the opinion. Costs to Appellee. *Page 1