OPINION
Defendant, Tobias H. Elsass, pro se, appeals three separate decisions issued by the Franklin County Court of Common Pleas, Division of Domestic Relations, with regard to the divorce action filed against defendant by plaintiff, Linda K. Parker.[1]
Plaintiff and defendant were married in March of 1983 and have two minor children, Ashley and Donald. During the marriage, plaintiff and defendant acquired a significant amount of real estate over which defendant exercised control. The real estate was titled either in the parties' individual names or in the name of Don Ash Properties, an Ohio general partnership with defendant as the sole partner.
Plaintiff instituted divorce proceedings against defendant on July 6, 2000. Along with the complaint for divorce, plaintiff filed a motion for temporary orders and a motion for a temporary restraining order. The trial court granted plaintiff's motion for a temporary restraining order on July 6, 2000. On August 21, 2000, the magistrate issued temporary orders. In those orders, plaintiff was designated legal custodian of the parties' two minor children. Defendant was granted visitation in accordance with Loc.R. 27, with modifications to accommodate the children's soccer schedules. Defendant was ordered to pay child support to plaintiff of $510.94 per month, plus processing fees. The magistrate "passed" on debt allocation due to the parties' failure to provide sufficient information as to whose name the debts were in and the purpose of the debts and because the income as disclosed by the parties was insufficient to pay the debts.
On August 28, 2000, defendant filed objections to the magistrate's order and requested a hearing pursuant to Civ.R. 75. Defendant challenged the magistrate's failure to order plaintiff to pay spousal support, to order debt allocation between the parties, to award defendant attorney fees so that he could obtain legal counsel and to award defendant custody of the children. Defendant also objected to the magistrate's order requiring defendant to pay child support.
On October 5, 2000, the parties filed a "Memorandum of Agreement," wherein defendant agreed to dismiss his "motion pursuant to Civ.R. 75." In addition, plaintiff agreed to cooperate in the refinancing of a Bank One mortgage note with regard to certain properties owned by the parties. Further, defendant was permitted to deal in the ordinary course of business with property owned by Don Ash Properties and agreed to provide plaintiff full documentation of any proposed transactions.
On March 8, 2001, defendant filed two motions for contempt claiming that plaintiff denied him visitation time with the children. On April 23, 2001, plaintiff filed a motion for contempt claiming that defendant failed to pay child support in accordance with the temporary orders. In an agreed entry dated May 4, 2001, the parties agreed that defendant was: (1) to provide full documentation of all real estate transactions and other financial transactions by May 11, 2001; (2) to appear for deposition at plaintiff's counsel's office on May 14, 2001; and (3) to bring all child support obligations current by June 5, 2001.
On July 18, 2001, plaintiff filed another motion for contempt due to defendant's failure to comply with the terms of the May 4, 2001 agreed entry. Specifically, plaintiff asserted that defendant refused to provide any documentation regarding the real estate transactions and failed to bring the child support obligations current.
On July 24, 2001, plaintiff filed a motion requesting that the trial court appoint a receiver for the real estate. In her memorandum in support of her motion, plaintiff alleged that defendant had been engaged in various transactions involving the real estate and had refused to provide plaintiff with records of any of the transactions.
On August 3 and 14, 2001, the court conducted a hearing on the parties' motions for contempt and plaintiff's motion to appoint a receiver. On October 2, 2001, defendant filed a contempt motion arguing that plaintiff had failed to comply with that portion of the October 5, 2000 "Memorandum in Agreement," in which plaintiff agreed to cooperate in the refinancing of the Bank One note.
By decision and entry filed October 22, 2001, the trial court ordered the appointment of a receiver to protect plaintiff's interest in the marital property. After a November 16, 2001 hearing on defendant's October 2, 2001 contempt motion, the trial court, on December 6, 2001, dismissed the motion based upon the "equitable doctrine of clean hands." In a decision and entry filed December 7, 2001, the court found defendant in contempt for failure to provide the real estate and financial documents and failure to appear for a deposition. The court also found defendant in contempt for failure to pay child support. The court further found that plaintiff had not acted in contempt of court.
Defendant filed notices of appeal from the October 22, 2001, December 6, 2001 and December 7, 2001 judgment entries. The cases were consolidated for purposes of appeal. Defendant advances eight assignments of error, as follows:
 [1.] The court erred in failing to order debt allocation between the parties in the temporary orders.
 [2.] The court erred in assigning hearing dates within weeks of filing plaintiff's motions while defendant is denied hearing dates for months.
 [3.] The court erred in not granting defendant's motion for mistrial based on misconduct of plaintiff's counsel.
 [4.] The court erred in not granting defendant a continuance of the hearing for August 3, 2001 for purposes of obtaining counsel.
 [5.] The court erred in dismissing defendant's motion for contempt against plaintiff for failing to comply with the court's order regarding the Bank One note.
 [6.] The court erred in not finding plaintiff in contempt for denying defendant visitation with his minor children.
 [7.] The court erred in appointing a receiver over the real property.
 [8.] The court erred in finding defendant in contempt for failure to provide discovery.
By his first assignment of error, defendant contends that the trial court erred in failing to order debt allocation between the parties in the temporary orders. Defendant contends that although he filed timely objections to the magistrate's order and requested a hearing on his objections, no hearing was ever held, and the trial court never ruled on his objections.
Preliminarily, we note that defendant's filing of "objections" to the magistrate's temporary orders was technically improper under Civ.R. 53. Unless otherwise specified in the order of reference, a magistrate's issuance of temporary orders in a divorce proceeding may be entered without judicial approval. Civ.R. 53(C)(3)(a); Simpkins v. Simpkins (2000), Lucas App. No. L-99-1112. Accordingly, the Civ.R. 53(E) procedures regarding the filing of "objections" to a magistrate's decision do not apply to such temporary pretrial orders. Simpkins, supra, citing State ex rel. Thompson v. Spon (1998), 83 Ohio St.3d 551. Rather, to appeal temporary pretrial orders issued by a magistrate, Civ.R. 53(C)(3)(b) provides that "[a]ny person may appeal to the court from any order of a magistrate entered under division (C)(3)(a) of this rule by filing a motion to set aside, stating the party's objections with particularity." (Emphasis added.) Despite defendant's technical noncompliance with Civ.R. 53, this court considers defendant's filing of "objections" as a "motion to set aside."
Upon review of the record, we find no merit to defendant's contention. Although defendant objected to the magistrate's failure to allocate the parties' marital debts and requested a hearing on the issue, he dismissed his motion to set aside pursuant to the October 5, 2000 "Memorandum of Agreement." Clearly, defendant has the burden to raise his dissatisfaction with the temporary orders, including the magistrate's failure to order debt allocation, with the trial court. Having dismissed his motion to set aside, defendant may not argue on appeal that the trial court erred in failing to hear his challenge to the temporary orders and/or to order debt allocation. In general, issues not raised before the trial court are waived on appeal, and appellate courts need not consider errors that the complaining party could have brought to the attention of the trial court at the time the error could have been corrected. State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78, 81. Because defendant dismissed his motion to set aside the temporary orders, we conclude that defendant waived any error by the magistrate in failing to order the allocation of the parties' indebtedness. Accordingly, the first assignment of error is not well-taken.
By the second assignment of error, defendant contends that the trial court acted contrary to Canon 3 of the Code of Judicial Conduct, failed to act impartially, and exhibited bias and prejudice against him. Specifically, defendant contends that the trial court assigned hearing dates on motions filed by plaintiff in a much more timely manner than on those filed by defendant. Defendant maintains that the court's actions were the result of being influenced ("whether consciously known by [the trial court] or not") by plaintiff's counsel, a former judge of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Assuming, without deciding, that defendant's contention is properly before this court at this juncture of the proceedings, we find no merit to it. "The Chief Justice of the Supreme Court of Ohio, or his designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." Jones v. Billingham (1995),105 Ohio App.3d 8, 11, citing Section 5(C), Article IV, Ohio Constitution, and Adkins v. Adkins (1988), 43 Ohio App.3d 95. R.C. 2701.03
provides the exclusive means by which a litigant can assert that a common pleas judge is biased or prejudiced. Id. Thus, an appellate court lacks the authority to pass upon the disqualification of a common pleas court judge. State v. Ramos (1993), 88 Ohio App.3d 394, 398.
As to defendant's contention that the trial court violated the Code of Judicial Conduct, the instant appeal is not the proper venue for such a complaint. Allegations of judicial misconduct are not cognizable on appeal but are matters properly within the jurisdiction of the Disciplinary Counsel. Szerlip v. Szerlip, Knox App. No. 01CA09, 2002-Ohio-2541, at ¶ 18. Accordingly, the second assignment of error is not well-taken.
Defendant's third assignment of error contends that the trial court erred in denying his motion for a mistrial after plaintiff's counsel made inappropriate comments about defendant to the trial court's staff attorney during defendant's examination of plaintiff at the hearing on August 14, 2001.[2] Defendant further maintains that the trial court's refusal to grant a mistrial constituted a violation of Canons 1 and 3 of the Code of the Judicial Conduct because the court failed to maintain "decorum" and "a high standard of conduct and integrity" in the proceedings and failed to report plaintiff's counsel's misconduct to the "appropriate tribunal." Defendant further contends that as a result of the trial court's conduct, the "fairness, impartiality and integrity" of the proceedings deteriorated to the point that all rulings made by the trial court were biased and must be set aside.
We first address the trial court's refusal to grant a mistrial. The decision whether to grant a mistrial is one addressed to the sound discretion of the trial court. Quellos v. Quellos (1994),96 Ohio App.3d 31, 41. This standard of review is based upon the fact that the trial court is in the best position to determine whether the circumstances of the case necessitate the declaration of a mistrial or whether other corrective actions are sufficient. Id. A reviewing court may not substitute its judgment for that of the trial court absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. A mistrial should only be granted where the party seeking the same demonstrates that he or she suffered material prejudice so that a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127.
Upon review of the record, we find no abuse of discretion in the trial court's refusal to grant a mistrial. The trial court admonished plaintiff's counsel about his inappropriate comments and stated unequivocally that the comments would not prejudice the court's decision-making process. The court further stated that it would be "unjust and unfair" to all those involved in the proceedings, including the parties' children, to suspend the proceedings and begin anew when defendant had suffered no prejudice. (8/14/01 Tr. at 106.) Based on the foregoing, we find that defendant has failed to demonstrate that he suffered material prejudice so that a fair trial was no longer possible.
As to defendant's contentions regarding the trial court's alleged bias and prejudice, we reiterate that this court may not pass upon the disqualification of a common pleas court judge or void rulings made by the trial court on grounds that the trial court exhibited bias or prejudice. Szerlip, supra. Further, defendant's contentions regarding the trial court's alleged violations of the Code of Judicial Conduct are not cognizable on appeal. Id. Defendant's third assignment of error is not well-taken.
By the fourth assignment of error, defendant contends that the trial court abused its discretion when it denied his motion for continuance in order for him to obtain counsel. We disagree.
A trial court has broad discretion when ruling on a motion for a continuance. State v. Unger (1981), 67 Ohio St.2d 65, syllabus; Sayre v. Hoelzle-Sayre (1994), 100 Ohio App.3d 203, 208. Therefore, the trial court's grant or denial of a motion for continuance will not be reversed upon review absent an abuse of discretion. Unger, supra, at 67. In ruling upon a motion for a continuance "[t]he trial court balances the court's interest in controlling its docket and the public's interest in an efficient dispatch of justice with the possibility of prejudice to the defendant," Sayre, at 208, citing Unger, at 67. The trial court may consider facts such as the length of the delay requested, prior requests for continuances, the legitimacy of the request for a continuance, whether the moving party contributed to the circumstances which gave rise to the request for a continuance, inconvenience to the parties, counsel, and the court, and "other relevant factors, depending on the unique facts of each case." Unger, supra, at 67-68.
In the instant case, defendant requested a continuance to obtain counsel during his examination of plaintiff on the second day of a two-day hearing. Defendant, an attorney currently indefinitely suspended from the practice of law by the Ohio Supreme Court, stated that he did not obtain counsel at the outset of the litigation because he did not have the funds to do so. As further reason for the continuance, he cited the "emotional process" of cross-examining his estranged wife. (8/14/01 Tr. at 54.)
Plaintiff's counsel opposed the motion, stating that defendant had been urged to obtain counsel at the outset of the litigation and that the litigation had been proceeding for over a year. The guardian ad litem appointed to represent the parties' children also opposed the motion, arguing that further delays in addressing child support issues would not be in the best interest of the children.
The trial court denied defendant's motion on the basis that the request for a continuance was not made until well into the hearing. The court further noted that plaintiff's counsel had encouraged defendant to obtain counsel on several occasions prior to the hearing, but that defendant had not done so.
The record reveals that defendant had no difficulty participating in the litigation against plaintiff in the months preceding the hearing. As the trial court noted, defendant, an experienced attorney, was well aware of his right to obtain counsel and was encouraged to do so over the course of the proceedings, but failed or refused to exercise that right. In addition, both plaintiff's counsel and the guardian ad litem opposed the motion. Defendant's request for a continuance was duly considered by the trial court, which determined that it was inappropriate at that time. Under such circumstances, we cannot conclude that the trial court abused its discretion in failing to grant the motion for continuance. A ccordingly, the fourth assignment of error is not well-taken.
By the fifth assignment of error, defendant contends that the trial court erred in dismissing defendant's October 2, 2001 contempt motion based upon the equitable doctrine of "clean hands."
In Bean v. Bean (1983), 14 Ohio App.3d 358, 363-364, the court reviewed circumstances where the "clean hands doctrine" is a pplicable in a divorce contempt proceeding:
 * * * [T]he familiar maxim in equity of "he who comes into equity must come with clean hands," is instructive in this case. The "clean hands doctrine" of equity requires that whenever a party takes the initiative to set into motion the judicial machinery to obtain some remedy but has violated good faith by [his or] her prior-related conduct, the court will deny the remedy. Keystone Drilling Co. v. General Excavator Co. (1933), 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293; Kinner v. Lake Shore MSR Co. (1904), 69 Ohio St. 339, 69 N.E. 614. The actions of appellee, the complaining party, against appellant, in retaining possession of personal property ordered to be sold, has tarnished her "clean hands." It is appropriate, therefore, that the contempt charge not be permitted to stand * * *.
In his contempt motion, defendant argued that plaintiff failed to comply with that portion of the October 5, 2000 "Memorandum in Agreement" in which plaintiff agreed to cooperate in the refinancing of the Bank One mortgage note. On November 16, 2001, the trial court heard argument on plaintiff's motion to dismiss the contempt motion. After reviewing the October 5, 2000 agreement and considering the arguments of counsel, the trial court orally granted plaintiff's motion to dismiss on the basis that defendant had failed to provide plaintiff with documentation of proposed transactions regarding the parties' real estate. The trial court concluded that it would be inequitable to hold plaintiff to the "letter of the agreement" when defendant had wholly failed to comply with "either the letter or anywhere near the spirit of [the] agreement." (11/16/01 Tr. at 12.) On December 6, 2001, the trial court dismissed defendant's contempt motion upon the "equitable doctrine of clean hands." Upon review of the record, we find no abuse of discretion in the trial court's decision. Accordingly, defendant's fifth assignment of error is not well-taken.
By the sixth and eighth assignments of error, defendant contends that the trial court erred in its disposition of the contempt motions filed by both parties.
Contempt is a disregard of, or disobedience to, an order or command of judicial authority. State v. Flinn (1982), 7 Ohio App.3d 294, 295. An appellate court may not reverse a trial court's finding (or lack of finding) of contempt absent an abuse of the trial court's discretion. State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11. As previously noted, an abuse of discretion means more than an error of law or judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. Blakemore, supra. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138, citing Berk v. Matthews (1990), 53 Ohio St.3d 161. This is so because the trial court is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections and to use such observations in weighing the credibility of the testimony. Id. at 138, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
There are two classifications of contempt — direct or indirect. Evans v. Cole (2001), Jackson App. No. 00CA17. Direct contempt occurs in the presence of the court in its judicial function. Id.; R.C. 2705.02(A). Indirect contempt is constituted by acts occurring outside the presence of the court that demonstrate a lack of respect for the court or its lawful orders. Id. Contempt may be further classified as civil or criminal and the classification depends upon the character and purpose of the punishment involved. Id. The punishment in civil contempt is remedial or coercive in nature and is imposed for the benefit of the complainant. Id, citing Pugh v. Pugh (1984), 15 Ohio St.3d 136; Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250. In contrast, criminal contempt is punitive and is typically characterized by an unconditional fine or prison term. Id.
As noted previously, the trial court held a hearing on the contempt motions on August 3 and 14, 2001. Thereafter, the court found defendant in contempt for failure to pay child support and for failure to comply with the terms of the May 4, 2001 agreements by refusing to provide plaintiff with documentation of all real estate transactions. In its decision and entry, the trial court sentenced defendant to seven days in jail, but suspended the sentence on the condition that defendant purge his contempt by: (1) providing plaintiff with full documentation of all real estate transactions within fourteen days of the date of the trial court's entry; (2) appearing for deposition at the office of plaintiff's counsel at a date and time to be determined by plaintiff's counsel, but no later than forty-five days from the effective date of the entry; and (3) paying an additional one hundred dollars per month on the child support arrearages until such time as the arrearages are liquidated. The court did not find plaintiff in contempt for allegedly denying defendant visitation with the children.
To support a finding of contempt, the trial court must find "clear and convincing evidence" that the alleged act occurred. Id., citing Pugh and In re Adoption of Holcomb (1985), 18 Ohio St.3d 361. "Clear and convincing evidence" is evidence which will impart in the trier of fact a firm belief or conviction as to the facts sought to be established. Id., citing Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121,122. "Clear and convincing evidence" is considered a higher degree of proof than a "preponderance of the evidence," the standard typically used in civil cases, but less than the "beyond a reasonable doubt" standard utilized in criminal cases. Id. The standard of review for weight of the evidence issues, even where the burden of proof is "clear and convincing" retains its focus upon the existence of "some competent, credible evidence." Id., quoting State v. Scheibel (1990),55 Ohio St.3d 71, 74.
With regard to plaintiff's contempt motions, we note that defendant admitted that he did not provide the real estate documentation and did not appear for deposition on the scheduled date. In defense of his actions, defendant argued that plaintiff had not complied with the October 5, 2000 agreed entry because she had not cooperated in the refinancing of a certain piece of property. The trial court was unpersuaded by defendant's argument, reasoning that the May 4, 2001 order requiring defendant to produce the documentation and appear for a deposition was not conditioned upon the plaintiff's compliance with the October 5, 2000 agreement between the parties. This finding is clearly supported by evidence of record and will not be disturbed by this court.
We further note that defendant also admitted that the last child support payment he made was on May 15, 2001, in the amount of $260.80. As of the time of the August 2001 hearing, defendant was $3,515.73 in arrears on his child support obligation. Defendant claimed that the arrearage was the result of a misapplication of funds. Specifically, defendant averred that he has another child support order in Montgomery County, Ohio, for a child who is not issue of his marriage and that funds meant to be paid to plaintiff were mistakenly paid on the Montgomery County order. The trial court acknowledged the Montgomery County order, but found that defendant had failed to set forth evidence to support his misapplication claim and had failed to present evidence that he had taken any action to remedy the situation. We cannot agree with defendant's unsupported contention that the trial court erred in holding him responsible for the proper application of the allegedly misapplied child support payments. We find nothing unreasonable in the trial court's finding.
As to the defense raised by defendant regarding his alleged inability to pay the ordered child support, the trial court thoroughly considered the evidence presented in support of this argument and found it unpersuasive. The trial court cited defendant's employment history and the total amount of child support arrearage and concluded that defendant had failed to prove the inability to pay the ordered support. Upon review of the record, we find no error in the trial court's conclusion.
Further, this court rejects defendant's contention that the magistrate erred in finding defendant capable of paying the ordered child support in the temporary orders. This court has already determined that defendant has waived his right to contest the temporary orders, as he agreed to dismiss his motion to set aside those orders in the October 5, 2000 agreement.
We turn next to the trial court's determination regarding defendant's contempt motions. Defendant's motions stem from four separate incidents of alleged denial of visitation. The trial court thoroughly considered the evidence presented, including the testimony of both plaintiff and defendant and the report of the guardian ad litem, and concluded that defendant had failed to establish that plaintiff willfully did not comply with the visitation schedule. Specifically, the court noted that it would not hold plaintiff in contempt for two incidents in which one or both of the children refused to go with defendant at the scheduled time. The court found credible plaintiff's testimony that she encourages the children to visit with defendant, but does not force them to visit against their wishes. The court further found that the two remaining incidents were the result of misunderstandings or mistakes, and the defendant had failed to establish that plaintiff was actively attempting to prevent defendant from seeing the children. The court simply found plaintiff's testimony more credible than that of defendant. Such is the province of the trier of fact. Seasons Coal Co., supra.
Upon thorough review of the trial court's December 7, 2001 decision and entry and the record of the August 3 and 14, 2001 proceedings, this court concludes that competent credible evidence exists to support the trial court's findings. The trial court thus did not abuse its discretion in finding defendant in contempt for his actions and in making no contempt finding regarding plaintiff's actions. Accordingly, the sixth and eighth assignments of error are not well-taken.
By the seventh assignment of error, defendant contends that the trial court abused its discretion in granting plaintiff's motion to appoint a receiver over the real estate.
Initially, we must consider plaintiff's December 20, 2001 motion to dismiss defendant's appeal of the trial court's October 22, 2001 order appointing a receiver. In her motion to dismiss, plaintiff contends that the trial court's order appointing a receiver does not constitute a final appealable order. We disagree.
It has been firmly established that an order appointing or removing a receiver is a final appealable order which affects a substantial right in a special proceeding. Mandalaywala v. Zaleski (1997), 124 Ohio App.3d 321,329, citing Forest City Invest. Co. v. Haas (1924), 110 Ohio St. 188, paragraph one of the syllabus. See, also, Jamestown Village Condominium Owners Ass'n. v. Market Media Research, Inc. (1994), 96 Ohio App.3d 678,689; Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership (1992),78 Ohio App.3d 340, 345; Equity Centers Development Co. v. South Coast Centers, Inc. (1992), 83 Ohio App.3d 643, 645, fn. 1; Bank One, Columbus, N.A. v. W.T. Investment Group (1991), Franklin App. No. 90AP-1212; Bank One, Columbus, N.A. v. O'Brien (1991), Franklin App. No. 91AP-166.
The cases cited by plaintiff in support of her contention are inapposite. None of the cases concern a trial court's appointment of a receiver. Neighbors v. Thistle Down Co. (1926), 26 Ohio App. 324, Prudential Ins. Co. of America v. Corporate Circle, Ltd. (1995),103 Ohio App.3d 93, and Stiver v. Stiver (1939), 63 Ohio App. 327, all involved trial court orders overruling motions to remove receivers. In those cases, the courts held that a trial court's order refusing to remove a receiver is not a final appealable order, as such an order was not one affecting substantial rights of the parties since the status quo between the parties remained the same. In Bailey v. Bailey (1989), Lorain App. No. 88CA004371, the order appealed from (which was held not to be a final order) was one ordering the receiver (who had been appointed in a previous order) to sell assets without providing what was to be done with the funds once received by the receiver.
Having determined that the trial court's order appointing a receiver was a final appealable order, we now address the merits of the order granting the motion.
R.C. 2735.01 authorizes the appointment of a receiver and states in relevant part:
 A receiver may be appointed by the supreme court or a judge thereof, the court of appeals or a judge thereof in his district, the court of common pleas or a judge thereof in his county, or the probate court, in causes pending in such courts respectively, in the following cases:
 (A) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured[.]
The general principles that govern the appointment of a receiver and the scope of an appellate court's review were well-stated inEquity Centers, supra, at 649-650:
 The appointment of a receiver is the exercise of an extraordinary, drastic and sometimes harsh power which equity possesses and is only to be exercised where the failure to do so would place the petitioning party in danger of suffering an irreparable loss or injury. Hoiles v. Watkins (1927), 117 Ohio St. 165, 174, 157 N.E. 557, 559. Because the appointment of a receiver is such an extraordinary remedy, the party requesting the receivership must show by clear and convincing evidence that the appointment is necessary for the preservation of the complainant's rights. Malloy v. Malloy Color Lab, Inc. (1989), 63 Ohio App.3d 434, 437, 579 N.E.2d 248, 250.
 It has long been recognized that the trial court is vested with sound discretion to appoint a receiver. State ex rel. Celebrezze v. Gibbs (1991), 60 Ohio St.3d 69, 73, 573 N.E.2d 62, 66. The Ohio Supreme Court has recently stated:
 "A court in exercising its discretion to appoint or refuse to appoint a receiver must take into account all the circumstances and facts of the case, the presence of conditions and grounds justifying the relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies." Id. at 73, 573 N.E.2d at 67, fn. 3.
 The order for an interim receiver may be reviewed only for the purpose of determining whether there is evidence tending to prove the facts essential to sustain the order, and a reviewing court may not consider the weight of the evidence. Malloy v. Malloy Color Lab., Inc. (1989), 63 Ohio App.3d 434, 436, 579 N.E.2d 248, 249. Such order may be reversed only when there is failure of proof which would be essential to support the order, and the order may not, in any event, be reversed upon the weight of the evidence. Id., citing Wilgus v. Arthur (1943), 72 Ohio App. 511, 53 N.E.2d 197.
The evidence at the hearing established that between the time the divorce complaint was filed and the date of the hearing, defendant transferred the properties formerly owned by Don Ash Properties to either R. Don Ash, Inc., or to Christopher Moore, who later transferred the properties to Charles Stack, defendant's roommate and best friend. R. Don Ash, Inc., is a Nevada corporation. The officer positions for R. Don Ash, Inc., are all held by R. Don Ash Ohio Real Estate Trust, Tobias H. Elsass, Trustee. Defendant did not provide any documents establishing the formation of the trust. Defendant denied having an interest in R. Don Ash, Inc, and claimed to have no knowledge of the identify of its shareholders.
Plaintiff argued that a receiver was necessary in order to investigate these transfers. The trial court agreed. In so doing, the court distinguished the instant case from Schultze v. Schultze (1964),5 Ohio App.2d 261, the case relied upon by defendant both during the trial court proceedings and here on appeal. In Schultze, the court reversed the appointment of a receiver because the plaintiff failed to demonstrate that the property she sought to protect actually existed. The court concluded that the plaintiff's real purpose in seeking appointment of a receiver was to gather evidence to determine whether there was, in fact, property for which the protection afforded by a receiver would be needed. The court held that that was not a proper purpose for the appointment of a receiver.
In contrast, this case is similar to Gorby v. Gorby (1988), Greene App. No. 87CA57. In Gorby, the court found that there was evidence presented demonstrating that the plaintiff had a right to an interest in the marital property of the parties and that the property must be protected, as it was in danger of being lost, materially injured, hidden, or wasted in the hands of the defendant.
Here, there is no dispute as to the existence of the property. Defendant testified to the existence of the property. Further, there is no dispute that the properties were part of the marital estate because defendant also testified that the properties were all formerly held in the name of Don Ash Properties, or in the parties' individual names. Defendant also testified that he transferred the properties to various third parties in order to protect the assets from potential claims by creditors. As noted by the trial court, in so doing, defendant effectively removed the properties from the reach of plaintiff. As such, defendant has harmed plaintiff by removing these significant assets from plaintiff's reach.
The trial court found, and we agree, that plaintiff demonstrated by clear and convincing evidence that a receiver is necessary to preserve her rights in the property. Plaintiff demonstrated that she has a probable interest in the property since it was acquired during the marriage. Indeed, there was no real dispute that the property transferred was in fact marital property. Plaintiff also demonstrated, through defendant's own testimony, that the property is in danger of being lost, removed or materially injured. Defendant admitted to transferring the property out of her reach and into the hands of third parties.
As further noted by the trial court, plaintiff proved that the circumstances warrant the harsh remedy of the appointment of a receiver. Testimony was presented from which it could be inferred that defendant had less than honorable intentions when he transferred the properties. Specifically, he admitted that he was trying to protect the property from the reach of creditors. However, by "protecting" the property from creditors, defendant also impaired plaintiff's interest in the property.
In short, this court agrees with the trial court's conclusion that plaintiff presented clear and convincing evidence of her interest in the property and of the potential for the loss, removal or material injury to the property and her interest therein, and that appointment of a receiver was necessary under the circumstances in order to protect plaintiff's interest in the marital property. As such, we cannot find that the court abused its discretion in ordering appointment of a receiver. Accordingly, the seventh assignment of error is not well-taken.
For the foregoing reasons, plaintiff's December 20, 2001 motion to dismiss is overruled, defendant's eight assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Motion to dismiss overruled; judgment affirmed.
LAZARUS and DESHLER, JJ., concur.
[1] We note that the brief filed by defendant violates App.R. 19(A) which requires "double spacing between each line of text except quoted matter[.]" The brief is instead single spaced. We hereby remind defendant of the App.R. 19(A) requirement and request defendant's cooperation in conforming to it in the future. Despite the nonconforming brief, we will consider the merit's of defendants arguments.
[2] At defendant's insistence, plaintiff's counsel restated his comment on the record: "watch this, he's about to dig a great big hole and step in it." (8/14/02 Tr. at 102.)